THE STATE EX REL. CRUMPACKER, *Collector*, *Plaintiff in Error*, *v.* THE CHICAGO, BURLINGTON & KANSAS CITY RAILWAY COMPANY.

. THE STATE *ex rel.* GUFFEY, *Collector*, *v.* SAME, *Appellant.*

1. **Taxation, Exemption from :** CONSTRUCTION : PRESUMPTION. Exemption from taxation should be confined to the strict terms of the law granting it. The abandonment of the right of taxation cannot be presumed, but must appear in clear and unequivocal terms.

2. ———— : BRANCH RAILROAD ACT. The act of 1868 to aid the building of branch railroads ( Laws 1868, p. 90 ) did not attempt to exempt such roads from taxation. ( Const. 1865, Art. 11, sec. 16).

3. ———— : ————. Although the charter of the St. Joseph & Iowa Railroad Company exempted its property from taxation, a branch road built by it under the act of 1868 ( Laws p. 90), would be subject to taxation in its hands.

4. **Railroads :** ST. JOSEPH & IOWA COMPANY : FRANCHISES. The St. Joseph and Iowa Railroad Company had no authority under its charter to sell its franchises, although it had power to pledge them. The power to sell was only given by the act of March 24, 1870. ( Acts. 1870, p. 90).

5. ———— : ACT OF MARCH 24, 1870. The last proviso of section two of said act of 1870, ( Laws p. 90), though using different language, was evidently designed to be as broad as the previous portion of the section, and to include all those cases where the railroad company of another state is allowed to make arrangements for the operation. of a road in this state, whether by lease, purchase or otherwise.

6. ———— : ———— : TAXATION. Property in this state, acquired under

The State ex rel. v. Chicago, Burlington & Kansas City Ry. Co.

the authority of section two of said act of 1870 ( Laws, p. 90), is not exempt from taxation.

7. ——: PURCHASE OF PROPERTY BY FOREIGN CORPORATION. The legislature, in giving a corporation of another state power to purchase a railroad in this state, with the privileges and franchises belonging to it, had the right to prescribe the terms upon which the purchase should be made.

8. Taxation, Exemption from. Exemption from taxation is a personal privilege to the person to whom, or the corporation to which, it is given, and is incapable of transfer, unless there is express statutory authority for it.

*Error to Sullivan Circuit Court.*—HON. G. D. BURGESS, Judge.

*Appeal from Putnam Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED as to first case.

AFFIRMED as to second case.

*Jno. P. Butler, B. G. Boone* and *S. P. Huston* for plaintiff in error and respondent.

(1) The power of taxation, is one of the attributes of sovereignty, which under our system of government is absolutely necessary for the maintenance of the general welfare and its surrender is beyond the legislative power. The contrary doctrine rests alone on bad precedents, founded upon ideas inimical to our institutions, and ought not to be followed. The act of 1857 is not a contract to exempt, unless there be a consideration for the act. This like any other agreement without consideration, is simply the promise of a gratuity to be kept, changed, or recalled at pleasure. No presumptions exist in its favor, and every reasonable doubt should be resolved against it. *Erie Ry. Co. v. Penn.* 21 Wall. 492 ; *Railroad v. Cass Co.* 53 Mo. 17 ; *Livingston Co. v. Railroad*, 60 Mo. 516. Plaintiff's objections to the act of 1857

should have been sustained, and its first, fifth and fourteenth declarations of law were erroneously refused. Sec. 20, Art. 13, Const. 1820 ; Sec. 7, Art. I, Chapter 34, Vol. 1, R. S. 1855; *Pacific Railroad v. Renshaw*, 18 Mo. 215; opinion of Justices Miller, Chase and Field in *Washington University v. Rouse*, 8 Wallace, 443–4 ; *Tucker v. Ferguson*, 22 Wallace 528; Field on Corporations, p. 599. (2) Plaintiff's objections to the act of 1866 should have been sustained, and its second and third declarations of law were erroneously refused. Sec. 27, Art. 4, Const. 1865; Sec. 4, Art. 8, Const. 1865 ; *Shields v. Ohio*, 95 U. S. 323; *Trask v. Maguire*, 18 Wallace 405 ; *Householder v. Kansas City*, 83 Mo. 492. (3) Plaintiff's fourth declaration of law was erroneously refused. (4) The objections urged by the plaintiff to the deed of May 23, 1871, may be considered substantially as follows . 1. The unconstitutionality of the act of March 19, 1866, under which the grantors wrongfully assumed the property rights, privileges and franchises of the St. Joseph and Iowa Railroad Company by virtue of the attempted legislative transfer of that date. 2. It was executed without the consent of the branch line stockholders, and therefore as to such branch line was inoperative and void. 3. It was neither a lease nor yet an act of consolidation, but on the contrary a conveyance upon conditions, providing for the reversion of the property in the event of the non-performance of the obligations imposed upon the grantee ; the grantee having abandoned the contract, the property, rights, privileges, franchises and immunities, which were the subject of the grant, thereby reverted to the grantor therein. 4. Only under the terms of the second section of the act of March 24, 1870 ( being sec. 52, of the general law ) could the grantee acquire the right to enter into, or to accept the terms of the contract in question. In accepting the benefits of that act, it likewise assumed the payment of taxes, as one of the burdens imposed as a condition precedent of

the power to purchase. This is a direct proceeding by the state to compel the payment of taxes. In this attempt to assert its sovereign power, it is driven to no particular remedy other than that it here pursues, for the proof of exemption lies upon them who assert it, and who are benefited in its establishment. *Hooker v. Road Co.* 12 Wend. 371; *Grand Rapids Bridge Co. v. Prange,* 35 Mich. 400. By entering into the agreement of May 23, 1871, the Burlington & Southwestern Railway Company asserted its acceptance of the provisions of the law, under which it assumed to act. *Railroad Co. v. Maine,* 96 U. S. 499; *Railroad Company v. Georgia,* 98 U. S. 359. "The true construction of this act is that if the foreign railroad company comes into Missouri by virtue of the authority therein conferred, and either extends its own road into this state or leases or operates or purchases a road in this state, it shall do so only on condition of being subject to taxation." See Mo. Sess, Acts 1870, sec. 2, pp. 90 and 91 ; see Mo. Sess. Acts 1871, Sec. 1, p. 56 ; *Ry. Co. v. Sullivan County,* 5 Dillon (U. S. C. C.) 289 ; *Western Union Telegraph Co. v. Lieb,* 76 Ill. 172. (5) Under the judicial sale made by Harry Lacy, master in chancery, to Elijah Smith, trustee, evidenced by the master's deed dated Dec. 13, 1880, said Smith became invested with the property described in such conveyance and with such rights, privileges and franchises as were a necessary incident to the proper use and enjoyment of the property purchased. Immunity from taxation was not one of them. *Morgan v. Louisiana,* 93 U. S. 217. (6) The Kansas City, St. Joseph and Burlington Railroad Company was organized under the general laws of Missouri by filing its articles of association with the secretary of state May 30, 1881. It became thereupon subject to taxation. (7) The stock and property of a branch line organized under the act of 1868 is not within the letter or spirit of the exemption from taxation. To all intents and purposes the branch

APRIL TERM, 1886.          527

The State ex rel. v. Chicago, Burlington & Kansas City Ry. Co.

is an independent company. *State ex rel. Wilson v. Garroute*, 67 Mo. 445 ; *State ex rel. Burton v. Dallas Co.*, 72 Mo. 329 ; *State ex rel. Wilson v. Ranney*, 74 Mo. 229 ; *Wagner v. Meetz*, 69 Mo. 150.   (8) The deed of conveyance from the St. Joseph & Iowa was insufficient to convey the branch or any interest in it.   The Branch Act of 1868 does not authorize any such transfer.   Acts 1868, p. 90.   (9) If the Central North Missouri Branch of the St. Joe and Iowa, which was afterward changed in name to the Linneus Branch of the Burlington and Southwestern, is to be regarded as an independent organization, as having its origin in the act of 1868, the exemption was forbidden by the state constitution. Con. 1865, Art. 11, Sec. 16 ; *State ex rel. Wilson v. Garroute*, 67 Mo. 465 ;   *Alexandria R. R. Co. v. Columbia*, 7 Am. &. Eng. R. R. Cases, 325 ; *State v. Saline Co. Court*, 51 Mo. 352 ; *State ex rel. Wilson v. Dallas Co.*, 72 Mo. 329 ; *State ex rel. Wilson v. Renney*, 74 Mo. 229 ; *Wagner v. Meetz*, 69 Mo. 150.   (10) "A railroad company cannot, without express authority in its charter, lease or sell its road."   *Railroad v. Boston*, 7 Am. & Eng. R. R. Cases, 49 ; *Clark v. Railroad*, 5 Neb. 314; *Archer v. Railroad*, 7 Am. & Eng. R. R. Cases, 249 ; *Thomas v. Railroad*, 101 U. S. 71 ; *Branch v. Jessup*, 9. Am. & Eng. R. R. Cases, 558; *Coquard v. Railroad*, 54 Ga. 379 ; *Stewart v. Jones*, 40 Mo. 140.   This rule is especially applicable to a transfer of exemption from taxation, which is held not authorized even when the legislature authorizes a sale of a railroad and its franchises. *Railroad v. Palmas*, 109 U. S. 252 ; *Kean v. Johnson*, 1 Stock. 401 ; *Troy v. Kerr*, 17 Barb. 581 ; *Trask v. McGuire*, 18 Wall. 391 ; *Morgan v. Louisiana*, 93 U. S. 217 ; *Wilson v. Gaines*, 103 U. S. 417 ; *Railroad v. Commonwealth*, 9 Bush, 438 ; *Railroad v. Steiner*, 61 Ala. 559 ; *Campbell v. Railroad*, 23 Ohio, 81–168 ; *Railroad v. Parcher*, 14 Minn. 297.   The only legislative authority to sell is found in the act of 1870.   Laws 1870, p. 90.

(12) A foreign corporation can only purchase, own and operate a railroad in this state, by permissive legislation. 2 Redf. on Railways, [5 Ed.] 589 ; *State v. Bailey*, 16 Ind. 46. " Every power, which a corporation exercises in another state depends for its validity upon the laws of the sovereignty in which it is exercised." " A corporation can have no legal existence out of the sovereignty creating it, but it may do business in another state, when so permitted." Angell & Ames [3 Ed.] sec. 2, p. 121. This necessary permission is only to be found in the act of March 24, 1870.

*L. T. Hatfield* and *A. W. Mullins* for defendant in error and appellant.

(1) The respondent, by virtue of the successive conveyances and assignments in evidence, is the owner of, and in possession and control of all the rights, privileges, franchises and immunities of the St. Joseph and Iowa Railroad Company. *State ex rel. v. Sullivan Co.*, 51 Mo. 522 ; *Cooper v. Sullivan Co.*, 65 Mo. 542. (2) The General Assembly had full power and authority to grant the exemption from state and county taxes, as an inducement to secure the construction of a railroad. Acts 1847, p. 156, sec. 4 ; *Shacklett v. Railroad*, 30 Mo. 550 ; *State v. Railroad*, 37 Mo. 265 ; *City of St. Joseph v. Railroad*, 39 Mo. 476 ; *Livingston Co. v. Railroad*, 60 Mo. 518 ; *Mechanic's Bk. v. Kansas City*, 73 Mo. 555 ; *Railroad v. Cass Co.*, 53 Mo. 17 ; *State v. Railroad*, 77 Mo. 202 ; *Humphreys v. Pegues*, 16 Wall. 244 ; Acts 1852, p. 15, sec. 3. (3) The General Assembly had full power to enact special laws and grant special privileges and immunities, by reference to other acts. *Morton v. Railroad*, 20 Mo. 69 ; *Railroad v. Morton*, 27 *Id*. 317 ; *Railroad v. Rowland*, 29 *Id*. 338 ; *Shacklett v. Railroad*, 30 *Id*. 550 ; *Railroad v. Marion Co.*, 36 *Id*. 295 ; *State v. Railroad*, 37 *Id*. 265 ; *St. Joseph v. Railroad*, 29 *Id*. 476 ;

*State ex rel. v. Sullivan Co.*, 51 *Id.* 522; *Smith v. Clark Co.*, 54 *Id.* 67 ; *Cooper v. Sullivan Co.*, 65 *Id.* 542. (4) The General Assembly was authorized to amend the charter of the St. Joseph and Iowa Railroad Company, March 29, 1866. *State ex rel. v. Railroad*, 48 Mo. 470 ; *State ex rel. v. Sullivan Co.*, 51 *Id.* 522 ; *Cooper v. Sullivan Co.*, 65 *Id.* 542 ; *Scotland Co. v. Railroad*, 65 *Id.* 135. (5) The St. Joseph and Iowa Railroad Company had authority to build branches from any point on its line. *State ex rel. v. Sullivan Co.*, 51 Mo. 522 ; *Cooper v. Sullivan Co.*, 65 *Id.* 542 ; *Railroad v. St. Louis*, 66 *Id.* 228 ; *Mechanic's Bk. v. Kansas City*, 73 *Id.* 555. (6) The Burlington & Southwestern Railroad Company, organized under the laws of the state of Iowa, had full power to enter into the contract of May 23, 1871. Laws Iowa of 1870, p. 221, secs. 1332, 1334. (7) The contract of May 23, 1871, left the rights, privileges and franchises, duties and liabilities of the respective parties thereto, just as they were prior to that time ; that instrument fully provided for the carrying on of the business of the company, its object was not diverted, but on the other hand was secured. *Scotland Co. v. Railroad*, 65 Mo. 129 ; *Cooper v. Sullivan Co.*, 65 *Id.* 542 ; *Railroad v. Maryland*, 10 How. 376 ; *Tomlinson v. Branch*, 15 Wall. 460 ; *Humphreys v. Pegues*, 16 *Id.* 244 ; *Railroad & Bk. Co. v. Georgia*, 2 Otto, 665 ; *Branch v. City of Charleston*, 2 *Id.* 677 ; *Pullman Car Co. v. Railroad*, 115 U. S. 594 ; *Paine v. Railroad*, 31 Ind. 349 ; *Sly v. Railroad*, 65 Pa. St. 209. (8) The right to build a railway with its rights, privileges, franchises and immunities, is property, and the subject of contract, mortgage and sale. *Daniel v. Railroad*, 62 Mo. 43 ; *Railroad v. St. Louis*, 66 *Id.* 228 ; *Hovelman v. Railroad*, 79 *Id.* 632 ; *Kansas City v. Railroad*, 85 Mo. 263 ; *Railroad v. Cowdry*, 11 Wall. 480. (9) The company had full power to mortgage its rights, privileges, franchises and immunities, and a corporation

with power to mortgage can as effectually convey rights, privileges, franchises, and immunities as a private individual, and subsequent legislation, unless provided for, can not effect the transfer, as the very security guaranteed would be imperiled. Authorities last cited, *supra.* (10) The powers of the respective companies were granted in the interest of commerce. And where charters partake of the nature of contracts, and no right to alter is reserved, so long as the legitimate objects of the corporation are effected the General Assembly cannot amend without consent. The right to amend must be unequivocal. *Sloan v. Railroad,* 61 Mo. 30; *Fairchild v. Masonic Hall,* 71 *Id.* 526; *Mechanic's Bk. v. Kansas City,* 73 *Id.* 555; *State ex rel., etc., v. Greer,* 78 *Id.* 188; *State ex rel. v. Miller,* 66 *Id.* 328. (11) As to the failure to build the line between Unionville and St. Joseph up to this time, that was and is a matter subject to the control of the board of directors and the demands of trade. The state delegated the power to the company and its managers are responsible alone to the state, the why or wherefore is not to be inquired into at the instance of any but the sovereign power in an action for that purpose alone. *Chambers v. St. Louis,* 29 Mo. 543; *Kinealy v. Railroad,* 69 *Id.* 663; *Railroad v. Speer,* 56 Pa. St. 331; *The Commonwealth ex rel. v. Railroad,* 58 *Id.* 26; *Hovelman v. Railroad,* 79 Mo. 632.

BLACK, J.—These suits were argued at the same time, present the same question, and will be considered together. The plaintiffs are collectors of the revenues, one of Sullivan and the other of Putnam county. They seek to recover delinquent taxes for 1881, 1882. The defendant claims to be the successor of the charter rights of the St. Joseph and Iowa Railroad Company, and by reason thereof, exempt from the payment of the taxes in suit.

The St. Joseph and Iowa Company was created by

the Act of January 22, 1857. This charter was amended by the acts of November 5, 1857, and March 19, 1868. The third section of the first named act provides that the company shall be subject to the same restrictions, and entitled to all the rights, privileges and immunities which were granted to the Hannibal and St. Joseph Railroad Company, by the Acts of February 16, 1847, and two designated amendatory acts. The charter of that company contains a like reference to the act creating the Louisiana and Columbia Railroad. Company, approved on January 27, 1837. By these various acts the directors of the St. Joseph and Iowa Company were authorized to construct a railroad from St. Joseph to some point on the Iowa line, so as to connect there with any railroad in this or that state; "to make  *  *  * branches along said road, or at the termination thereof, as they may deem necessary;" and it is also declared: "Every person who shall cease to be a stockholder shall cease to be a member of said company; and the stock of said company shall be exempt from state and county taxes."

On the twenty-fifth of March, 1871, the directors passed a resolution asserting their desire to avail themselves of the act entitled "An act to aid the building of branch railroads in the state of Missouri," approved March 21, 1868, the branch to be known as the Central North Missouri Branch, and to be built from a point on the main line near Unionville, through Putnam, Sullivan and Linn counties and the town of Linneus. Sullivan and Putnam counties subscribed to the stock of the road for the use of the branch. At the request of the agents of those counties, they being the only stockholders, an executive committee for the branch was appointed, with power to survey, etc. Thereafter, and on May 23, 1871, the board of directors of the St. Joseph and Iowa Company, by their deed and contract, sold and conveyed the main line and all of the property of

the company, including "all the rights, privileges, franchises, powers and authority owned or held" by said company to the Burlington and Southwestern Railway Company, a corporation created under the laws of the state of Iowa. Afterwards, and in 1872, the directors of the Burlington Company, acting by the direction of the stockholders of the branch road, then called the Linneus Branch, placed upon the branch road a mortgage to secure certain bonds. The main line had been previously mortgaged. The defendant purchased the branch road through a foreclosure sale, had upon the mortgage thereon. The taxes in suit were assessed upon this branch road property.

1. The exemption of the stock of the St. Joseph and Iowa Company, it may be conceded, was also an exemption of the property represented by it. As between the state, the company, and the] stockholders, it is assumed, for all the purposes of this case, that the property of the company, including any branch road built solely under authority of the charter, would be exempt from state and county taxes. The further question then arises, is the property of the branch, avowedly built under the branch act of 1868, also exempt? The power of the legislature to forever place property out of and beyond the reach of taxation, upon no other consideration than that which may be presumed to accrue to the public by the building of a railroad, is so far reaching in its logical consequences that the exemption should be confined to the clear and strict terms of the law. The abandonment of the right of taxation cannot be presumed, and must appear in clear and unequivocal terms. *Railroad v. Cass County*, 53 Mo. 17, and cases cited. The constitution of 1865 deprived the general assembly of all power to hereafter exempt this class of property. Art. 11, sec. 16. The branch railroad act of 1868 makes no such effort.

If this property is free from taxation it is because of the charter privileges of the St. Joseph and

Iowa Company. The charter has in view main and branch lines, which are parts of one entire piece of property, with one management and one set of stockholders. The Branch Act, it is true, applies only to such roads as have power to build branches, but by the act, the stock subscriptions are to be made in aid of the branch, and the certificates must so state. The cost and expenses of construction and operation of that and the main line are to be kept separate. Neither can participate in the profits of the other. Neither can be held for the debts of the other. The branch stockholders have nothing whatever to do with the main line ; they determine all matters specially affecting the branch, and the directors must be guided by their instructions. They may participate in the choice of officers only. Here we have a branch road by name, and while it has no separate corporate existence, yet for nearly all practical purposes it is a separate organization. It cannot be that stock and property of that character, and with these attributes, was ever contemplated by the legislature, when it said the stock of the St. Joseph and Iowa Company should be exempt from state and county taxes. Such exemption ought not to be extended or permitted to go further than the express terms of the law, and the clear intention of the parties to the contract. Had the branch never been divorced from the main line, still projected as it was, under this act of 1868, the property ought to be held subject to taxation, even in the hands of the St. Joseph and Iowa Company.

2. Again the St. Joseph and Iowa Company had no authority, by any of the provisions contained in its charter, to sell its franchises though it had to pledge them. The power to sell was only given by the act of March 24, 1870 (Acts of 1870, p. 90). The deed from the St. Joseph and Iowa Company to the Burlington Company was evidently made by authority of the second sec-

tion of that act, which after providing that any railroad
company may aid another company in the construction
of its road for the purpose of forming a connection, and
that any company of this state may extend into an ad-
joining state, provides also: "Or any railroad company
organized in pursuance of the laws of this or any other
state, or of the United States may lease or purchase all
or any part of a railroad with all its privileges, rights,
franchises, real estate and other property; the whole or a
part of which is in this state, and constructed, owned or
leased by any other company, if the lines of said road or
roads of said companies are continuous or connected at
a point either within or without this state, upon such
terms as may be agreed upon between said companies
respectively,  *  *  *  provided that no such aid shall
be furnished nor any purchase, lease, sub-letting, or
arrangements perfected until a meeting of the stock-
holders;  *  *  *  *  *and provided further* that if a rail-
road company of another state shall lease a railroad, the
whole or a part of which is in this state, or make ar-
rangements for operating the same as provided in this
act, or shall extend its railroad into this state, such part
of said railroad as is within this state shall be subject to
taxation, and shall be subject to all regulations and pro-
visions of law governing railroads in this state," etc. It
is true the last proviso speaks of a lease, but does not in
terms of a *purchase* by the foreign corporation, as does
the preceding portion of the section, but it does provide
for all those cases where the foreign company shall lease
a road, the whole or a part of which is in this state, or
shall make arrangements for operating the same under
the provisions of the act, or shall extend its road into
this state.  When the proviso speaks of the company of
another state extending its road into this state or mak-
ing arrangements for operating a road the whole or a
part of which is in this state, it includes an arrange-
ment by purchase.  The proviso, though using different

language, was evidently designed to be as broad as the previous portion of the section, and to include all those cases where the company of the other state is allowed to make arrangements for the operation of the road in this state, whether by lease, purchase or otherwise.

The legislature in giving a corporation of another state power to purchase a railroad in this state with the privileges and franchises belonging thereto had the undoubted right to prescribe the terms upon which the purchase could be made. As was said in *Owen v. Railroad*, 83 Mo. 455, when speaking upon another subject, the manifest policy was to get legislative control of all railroad corporations. The Burlington Company by availing itself of the provisions of this act of 1870 thereby signified its acceptance of the provisions thereof and is bound thereby.

It follows that the Burlington Company could not and did not acquire the immunity from taxation. It did not pass to that company at all; and the property acquired by the purchase became subject to taxation, including the branch. The part of the main line from Unionville to St. Joseph has never been built; the other portion, some fourteen miles in length, was built by the Burlington Company. As to the branch it is not even shown that preliminary surveys had been made until after the date of the deed, though two counties had made subscriptions for stock thereto. From the date of the deed the directors of the Burlington Company occupied the same relation to the branch that the directors of the St. Joseph and Iowa Company had before occupied. If, as we have seen, the Burlington Company did not acquire the immunity from taxation it is difficult to see how any branch built by it could take on the exemption. Any branch it might build became also subject to taxation.

3. Referring again to the mortgage on the branch road of date April 1, 1872, it will be seen it was

made by the directors of the Burlington Company at the request of the stockholders in the branch. The authority contained in the branch act of 1868 is as follows: "They may borrow money and issue bonds secured by mortgage on such branch road to aid in its construction, and in general may operate, lease, sell or consolidate with any connecting road, distinct and separate from their main line and in any other way may manage or dispose of such branch as by law they may be authorized with reference to their main line and separate therefrom." There is a provision in the act of Nov. 5, 1857, which gives the St. Joseph and Iowa Company power to pledge their road and property "with the franchises of said road" to raise money to liquidate debts, etc. There is not a thing in the act of 1868 which can by any possibility be construed to authorize a transfer by mortgage or otherwise of the immunity from taxation, if any the branch road ever had. But if that act is to be read with the charter provision above quoted, still there is no authority to convey by mortgage or otherwise such right of exemption. *Morgan v. Louisiana*, 93 U. S. 217; *Railroad v. Commissioners*, 112 U. S. 617.

These decisions show that exemption from taxation is a personal privilege to the person or corporation to which it is given, incapable of transfer unless there is express statutory authority therefor. Franchises, it is said in the first of the above cases, "are positive rights or privileges without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them." There is nothing in either of these acts or the act of 1870 which calls for a broader signification to be given to the term "franchises" than is given in the foregoing definition. It must follow that there never was any authority given by law to convey or assign by pledge the right to be exempt from taxation, and it is, there-

fore, immaterial what words were used either in the mortgage or decree of foreclosure. Other questions were discussed, but it is unnecessary to consider them as they cannot change the result.

The judgment in the first of these cases is, therefore, reversed and the cause remanded; that in the other is affirmed. All concur.