THE STATE ex rel. MORRIS, Collector, v. BOARD OF TRUSTEES OF WESTMINSTER COLLEGE, Appellant.

### Division One, May 27, 1903.

1. **Religious Corporation:** CHURCH SCHOOL. A corporation established purely for education in literature, arts and the sciences, is not a religious corporation, even though it be given into the care of a religious body which appoints its trustees. A corporation for its character is to be judged by the objects of its creation as expressed in its charter.

2. **Educational Corporations:** DURATION OF CHARTER. Colleges and other educational corporations chartered by special acts of the Legislature, are in their nature designed to be perpetual, and the general law limiting the life of all corporations to the time mentioned in their charters, or, if no time is mentioned, to twenty years, does not apply to them.

3. ———: PROPERTY EXEMPTED FROM TAXES: IMPAIRMENT OF CON-TRACTS. The Legislature by an act passed in 1857 declared that "all the property and effects" of Westminster College "shall be exempt from all taxation" and declared that this grant should be irrevocable, and at that time the Legislature, under the then Constitution, had authority to exempt the property from taxation. *Held*, that, as the corporation accepted the charter, it thereby became a contract between the State and the corporation, and the provisions of subsequent Constitutions putting limitations on the power of the General Assembly to exempt property from taxation, were prospective only in their operations, and were not intended to impair the obligation of a contract into which the State had previously entered.

4. ———: ———: WHEN USED FOR OTHER PURPOSES: ANNUITY. An educational corporation can not receive and hold property for any purposes except those mentioned in its charter, and if it does, that property is subject to taxation. But real estate held under a will which charges it with an annuity in favor of testator's widow, is not held for other purposes, if there came with it also a large amount of personal property which yields an annual income in excess of the annuity out of which the annuity is paid.

Appeal from Hannibal Court of Common Pleas.—*Hon. D. H. Eby,* Judge.

REVERSED.

*F. L. Schofield* and *Chas. W. Bates* for appellant; *H. S. Priest* of counsel.

(1) Defendant's charter containing the provision that "all the property and effects of said corporation shall be exempt from taxation" is a contract between the State and defendant, inviolable under the Federal Constitution. The State can tax no property of defendant. Home of the Friendless v. Rowse, 8 Wall. 430; Washington University v. Rowse, 8 Wall. 439; St. Vincent's College v. Schaefer, 104 Mo. 261. (2) The quoted charter provision contractually covers all property acquired subsequent to its enactment. Asylum v. New Orleans, 105 U. S. 362. (3) Our State Constitutions of 1865 and 1875 were not intended to affect ex-

emptions from taxation granted by charters of prior date.  State v. St. Joseph's Convent, 116 Mo. 575.  (4) Plaintiff's cause of action is on tax assessment against defendant solely in its corporate name.  If defendant had no corporate existence when assessed, plaintiff can not recover.  St. Louis v. Wennecker, 145 Mo. 230; Moss v. Kauffmann, 131 Mo. 424; State ex rel. v. Thompson, 149 Mo. 445.  (5)  A party that has recognized an alleged corporation in dealings with it, can not deny its corporate existence in litigation concerning those dealings.  Bradley v. Reppell, 133 Mo. 545; City v. Shields, 62 Mo. 252; Catholic Church, etc., v. Tobbein, 82 Mo. 418; St. George's Church v. Branch, 120 Mo. 243; State v. Fuller, 96 Mo. 167.  (6) Defendant is not a "religious corporation" within the meaning of art. 13, sec. 5 of the Constitution of 1820, because its main object is educational, not religious.  St. Louis Colonization Society v. Hennessey, 11 Mo. App. 555; In re St. Louis Institute of Christian Science, 27 Mo. App. 633; Franta v. Bohemian R. C. Central Union, 164 Mo. 304.  (7) The object of this charter and its provisions show that its existence was not limited to twenty years. R. S. 1845, page 231, section 1, does not apply to it. State ex rel. v. Lesueur, 141 Mo. 29; State ex rel. v. Ladies of Sacred Heart, 99 Mo. 533; Fairchild v. Masonic Hall, 71 Mo. 526; State ex rel. v. Payne, 129 Mo. 468; State ex rel. v. Gravel Road, 138 Mo. 332.  (8) The plaintiff has no more standing to object to defendant's acceptance of the Sausser devise than he has to question defendant's corporate existence.  Ins. Co. v. Smith, 117 Mo. 289; Hall v. Bank, 145 Mo. 425.  (9) The fact that the widow is entitled to an annuity out of the charitable fund of which the realty assessed is ultimately to become a part by conversion, gives her no present interest in the realty, and leaves the question as to the taxation of the whole of that realty between defendant and the State solely.

*Reuben F. Roy* and *Sydney J. Roy* for respondent.

(1)　The alleged charters of 1855 and 1857 were attempts to establish a religious corporation contrary to section 5, article 13, Constitution 1820.　McLaughlin v. Concordia College, 20 Mo. App. 46; State ex rel. v. Adams, 44 Mo. 578; Bradfield v. Robert, 175 U. S. 291. (2)ʹ　Said charters have expired by the twenty-year limitation.　Sec. 1, art. 1, ch. 34, R. S. 1845.　This limitation applies to educational institutions.　Watson Seminary v. Co. Ct., 149 Mo. 70; State ex rel. v. Sacred Heart, 99 Mo. 539; State ex rel. v. Payne, 129 Mo. 476. (3)　The power to acquire charters is not lost to defendant.　Surely it has not lost its cunning.　It knew how to obtain four, the first two of which are perhaps still alive, and surely if necessary another charter could be had.　Its property would be available for all its purposes.　Academy v. Clemens, 50 Mo. 167; Goode v. McPherson, 51 Mo. 126; Lackland v. Walker, 151 Mo. 210. (4)　The want of constitutionality in the alleged charters of 1855 and 1857, and the fact of their expiration, are available to the plaintiff in this cause and do not have to be determined in a direct proceeding for that purpose.　Bradley v. Reppell, 133 Mo. 545; Railroad v. Trust Co., 36 C. C. A. 167.

VALLIANT, J.—This is a suit by the collector of Marion county to recover taxes assessed against certain real estate in that county as the property of the defendant corporation.

Under the pleadings the plaintiff is entitled to recover unless the property in question is exempt from taxation by virtue of the terms of defendant's charter.

Defendant by its answer claims charter existence and powers under four separate acts of the General Assembly incorporating it as an educational institution, to-wit:　Act of February 1851 (Laws 1850-51, p. 356); Act of February 18, 1853 (Laws 1852-3, p. 279); Act of

December 12, 1855 (Loc. Acts 1855, p. 340); and Act of February 25, 1857 (Laws 1856, p. 269).

For the purposes of this case an adjudication of the defendant's rights under the charter of date February 25, 1857, is sufficient, as that is the charter under which the exemption from taxation is claimed and is the one which the plaintiff especially assails.

There is no dispute as to the facts of the case. The statements in the answer are admitted to be true and the only questions are those relating to the validity of the charter in the face of the Constitution and its interpretation. The finding and judgment were for the plaintiff and the defendant appeals.

I. The first section of the Act of February 25, 1857, is: "An institution of learning is hereby authorized and established in or near the town of Fulton, Callaway county, to be known as Westminster College, and, in all its interests, to be under the care and control of the Synod of Missouri, in connection with the General Assembly of the (Old School) Presbyterian Church in the United States of America."

In the second section certain persons are named as the board of trustees for the time, in the third section the power to appoint their successors is given to the Synod of Missouri, and in the fourth section the trustees are given the power to appoint the faculty, prescribe the course of study, confer academic degrees, etc.

Appellant contends that this charter is in violation of section 5, article 13, of the Constitution of 1820, which ordains that "no religious corporation can ever be established in this State." The sum of the argument is that because the Synod of the Presbyterian Church in Missouri is given the care and control of the interests of the corporation and the appointment of the trustees, it is therefore a religious corporation.

A corporation established for purely academic purposes, for education in literature, in the arts and sciences, is in no sense a religious corporation even

though it be given into the care and under the management of a religious body. Religious corporations as they were known at common law were not looked upon with favor by the early inhabitants of this country in whose mind they were associated in a great degree with the idea of a union of Church and State, and therefore the disposition was to give them no countenance in law. But this has always been a Christian country, and there is nothing to be found in either the letter or spirit of our law, or in the spirit of our republican institutions, that disapproves of educational institutions under the control of churches. The learned counsel for appellant in their brief have referred to a large number of schools and colleges in this State under Church control, chartered by special acts of the General Assembly under the Constitution of 1820, many of which are still in existence, and no one has ever questioned the validity of their charters on the ground that is here urged against this defendant.

The purpose of our law, as to religious corporations, is to leave the subject of religion free from legal restraint or legal assistance, to leave the various churches to pursue their own ways unaided and unrestricted by law, no one favored and no one discriminated against. If we should say that colleges may be incorporated by men who have no religious views, but not by men who entertain such views, we discriminate against religious people in a matter the most important to the welfare of the State. The argument is that if the religious society has the selection of the teachers and the management of the college affairs, it is enabled to propagate its religious tenets in the youth who come within its influence. But that is an incident of which the law takes no account; it does not charter the corporation to teach religion, but to educate in literature, arts and sciences, and if while a youth is receiving such education he is brought under the influences of a particular religion, the law has no concern

with that incident.   A corporation for its character is to be judged by the objects of its creation as expressed in its charter.   If it should abandon the purpose for which it was incorporated and devote its corporate power to a purpose forbidden or not authorized, the State may call it to account and oust it of its franchise.

The learned counsel for respondent rely on the following cases to sustain their contention that this is a religious corporation:   State ex rel. v. Adams, 44 Mo. 570; McLaughlin v. Concordia College, 20 Mo. App. 42; In re St. L. Inst. Christian Science, 27 Mo. App. 633.

In the first of those cases the college had been established through the endowment of a man who had stipulated in the act that it should not come under the influence of any particular church and afterwards by an amendment of the charter it was attempted to bring the college under the management of the Methodist Church. The court held that the amendment was in violation of the original contract and therefore invalid.   The second case involved only the question of liability under a contract for constructing a college building.   The third was an application to the court for a charter to teach Christian Science according to a certain school. There is nothing in either of those cases to sustain the plaintiff's position.

It has been held by this court that a corporation might lawfully be formed under our statute regarding fraternal beneficial societies, which limited its membership to members of a particular church, and that such was not a religious corporation.   [Franta v. Bohemian R. C. Cent. Union, 164 Mo. 304.]   And our St. Louis Court of Appeals has held that a colonization society limiting its membership to members of a particular church was not a religious corporation.   [Colonization Society v. Hennessy, 11 Mo. App. 555.]   In that case the court, per THOMPSON, J., said:   "Is this then a religious corporation?   We do not think it is.   . . . It is apparent from these provisions that the primary

object of this association is colonization, and not the propagation of religion. It is true that the scheme of colonization is confined to persons of a particular religious faith; but there is certainly nothing in the section of the Bill of Rights above quoted which prohibits persons of a particular religious faith from settling together so that they may be able to have a church in which to exercise the offices of their faith and a school in which to educate their children in the faith of their fathers, if they shall choose to do so.''

We hold that the defendant is not a religious corporation and that its charter is not obnoxious to our Constitution on that ground.

II. The next contention is that the charter has expired under the limitation prescribed in section 1, chap. 34, Revised Statutes 1855, which was in force at its date, and which is to the effect that every corporation shall have succession as such for the period limited in its charter, and when no period is limited, for twenty years. The same provision has been continued in our laws to the present time. [R. S. 1899, sec. 971.] But whilst that section in its terms seems to apply to all corporations, yet it has been interpreted by this court as not applying to corporations of this kind, because to so apply it would be to defeat the evident purpose of the act of incorporation. [State ex rel. v. Ladies of the Sacred Heart, 99 Mo. 533; State ex rel. v. Lesueur, 141 Mo. 29.]

Educational institutions of this kind are not established with a view of being continued for a brief period only or indeed for any limited time; in their very nature they are designed to be perpetual.

It would be preposterous to assume that men would enter into the work of founding a college, erecting buildings and gathering the necessary appliances for the conduct of such an institution to be dissolved at the end of twenty years. Therefore, although this charter contains no express words declaring that there is to be no

period to its duration, yet it is impossible to read it without perceiving that it was the design of the Legislature to make it perpetual.

We hold that the defendant's charter has not expired.

III.   By the second section of the charter it is provided that: "all the property and effects of said corporation shall be exempt from all taxation and the seventh and eighth sections of article 1 of an act concerning corporations approved November 17, 1855, shall not be applicable to this corporation." The section 7 there referred to is in these words: "The charter of every corporation that shall hereafter be granted by the Legislature, shall be subject to alteration, suspension and repeal, in the discretion of the Legislature."

The General Assembly, in granting this charter in 1857, by its terms expressly granted the corporation exemption of its property from taxation and declared that the grant should be irrevocable.  The corporation accepted the charter and it thereby became a contract between the State and the corporation.

At the date of this charter, the General Assembly had authority to exempt the property from taxation, there being no restriction on the power of the General Assembly in that respect under the Constitution of 1820.

The Constitution of 1865 and that of 1875 put limitations on the power of the General Assembly in the matter of exempting property from taxation, but those provisions were intended to be prospective only in their operations; they were not intended to impair the obligation of a contract into which the State had previously entered.   [St. Vincent College v. Schaefer, 104 Mo. 261; State ex rel. v. St. Joseph Convent, 116 Mo. 575.] We hold that the property of this corporation held by it for its corporate purposes is exempt from taxation.

IV.   It is contended, however, that the property in question is charged with an annuity of $2,500 to be paid to Mrs. Sausser during her life, that is, that it was de-

vised to the corporation for its own purposes subject to that annuity.

The defendant was incorporated and granted these valuable rights for the sole purpose of establishing and maintaining an educational institution. It has no authority to carry on any other business nor to hold property for any other purpose. It can not receive and hold property, under the shield of exemption from taxation, for any other than its corporate purpose. It may lawfully take property, burdened as this is said to be, if it is really designed for its own use in the end, but to the extent that the property is devoted to a purpose other than that for which the corporation was created it is not exempt from taxation.

In this case, however, the answer says in substance that whilst the will under which the property came to the corporation charges the annuity upon it, yet that, besides the property sought to be subjected to taxation in this proceeding, which is real estate, there also came under the will a large amount of personal property which has been invested and yields $5,000 a year, and that the annuity is being paid out of that and not out of the realty. That statement is admitted to be true. Therefore, the land in question in this suit is in fact being used for no other purpose than maintaining the institution of education and hence is not subject to taxation.

The judgment is reversed.    All concur, except *Robinson, J.*, absent.