# THE STATE ex rel. WABASH RAILWAY COMPANY v. CORNELIUS ROACH, Secretary of State.

## In Banc, March 24, 1916.

1. **CORPORATION: Franchises: Sale.** The franchises of a railway company are divisible into two classes: first, the mere right of being a body corporate; and, second, all other powers or privileges granted by the sovereign power. The first is not subject to barter and sale; the second are.

2. ———: ———: **What Passes by Mortgage Sale.** Both by the laws and Constitution of Missouri and by the general law, all the franchise rights of a railway company except the mere right to be a corporation, including the right to do business within this State, pass to the purchaser at a foreclosure mortgage sale, where the franchise rights have been conveyed by the mortgage.

3. ———: **Wabash Railroad: Right of Purchaser to do Business.** On December 26, 1906, the Wabash Railroad Company, then possessed of the right, privilege and franchise to do a railroad business in this State, mortgaged all those rights, and they passed by foreclosure sale in 1915 to the Wabash Railway Company, a new corporation, organized under the laws of Indiana. Ever since the building of the North Missouri Railroad under the Act of 1851, there has been a State grant of a right to do intrastate business over that railroad and its after-acquired and after-constructed portions, which has successively passed, by statutory authority, to divers successors of the old railroad company, and is now vested, by reason of said foreclosure sale and purchase, in the said Wabash Railway Company.

4. ———: ———: **Police Power.** The grant of a right to construct and own a railroad and to do a railroad business within the State is not a right that falls within the police power. The control of common carriers, such as, for instance, the fixing of maximum passenger or freight rates, is an exercise of police power; but that is a totally different question from the right to do business at all.

5. ———: ———: ———: **Violation of Charter Rights.** The Legislature cannot, in the exercise of assumed police powers, violate charter contracts and overthrow vested rights. The Wabash Railway Company, being the owner of a franchise right

to own and operate a railroad and do a railroad business in this State, granted by the State to the North Missouri Railroad Company prior to the adoption of the Constitution of 1875, and passed by successive mortgages and foreclosure sales to said present company, cannot by a legislative act be deprived thereof, for such right does not pertain to police powers, but is a contract right.

6. ———: ———: **Permission to Do Business: Retroactive Statute.** The Act of 1913, Laws 1913, p. 179, declaring that no railroad corporation, except one incorporated under the laws of this State, shall be permitted to do an intrastate business in this State, does not have a retroactive operation, and does not apply to a foreign corporation which has succeeded to the rights of another railroad company which long prior to the enactment of said statute had been granted by the State the right to own and operate a railroad in this State and to carry on an intrastate railroad business, and the Secretary of State cannot lawfully withhold from said corporation a permit or license to do business in Missouri. That act cannot contravene existing rights lawfully granted by the State. It applies to railroads built subsequently to its enactment, and does not affect those then operating in the State.

> *Held*, by WOODSON, C. J., dissenting, that the Act of 1913 applies simply to intrastate business and railroads, and the Constitution (Art. 12, sec. 18) retained jurisdiction over so much of a consolidated railroad as is in this State.

7. ———: ———: ———: **Due Process: Impairment of Contract.** To hold that a foreign corporation which by purchase has acquired the railroad of another company and its franchise right to do business in this State, acquired prior to the enactment of the Act of 1913, Laws 1913, p. 179, cannot do a railroad business in this State, would be to take valuable property rights without due process of law, and to impair the obligation of contracts, not only of said company, but of all other foreign corporations now owning and operating railroads under franchises granted prior to its enactment.

## Mandamus.

WRIT ISSUED.

*James L. Minnis* and *Nagel & Kirby* for relator.

(1) Relator owns the portion of the Wabash Railroad situated in Missouri and is not only authorized by

section 13, article 12, of the Constitution to carry persons and property as a common carrier "between any points within this State," but is required to do so by section 14 of the same article, which declares relator "a common carrier" and its railroad "a public highway." Sec. 3078, R. S. 1909; Brown v. Railroad, 137 Mo. 537; Dietrich v. Murdock, 42 Mo. 284; Branch v. Jessup, 106 U. S. 483; Gamble v. Q. C. W. Co., 123 N. Y. 91. (2) The Act of 1913 is void because, if given effect, it would impair the obligations of contracts and deprive relator of its property without due process of law, in violation of the Constitution of the United States. Sec. 1, art. 14, of Amendments to U. S. Constitution; Daniels v. Railroad, 62 Mo. 43; Railroad v. Delamore, 114 U. S. 501; Julian v. Trust Co., 193 U. S. 93; Railroad v. Commissioners, 112 U. S. 609; Vicksburg v. Waterworks Co., 202 U. S. 453; Lawrence v. Hennessey, 165 Mo. 659; State ex rel. v. Lesueur, 145 Mo. 322; Railroad v. Missouri, 152 U. S. 301; Pullman Car Co. v. Railroad, 115 U. S. 587; Muller v. Dows, 94 U. S. 444; Dodd v. Railroad, 108 Mo. 581. (3) Relator purchased at the foreclosure sale, with the railroad, the right to conduct thereon in the State of Missouri, the business of a common carrier, and as such to transport passengers and freight locally between points in Missouri, subject only to filing the statement and affidavit and paying the tax and fees required of foreign corporations as a condition precedent to their right to do business in this State. Julian v. Trust Co., 193 U. S. 93; New Orleans v. Delamore, 114 U. S. 501; Railroad v. Commissioners, 112 U. S. 609; Christian Union v. Yount, 101 U. S. 352; Railroad v. Allison, 190 U. S. 326; Burgess v. Seligman, 107 U. S. 20. (4) The Act of 1913, in prohibiting foreign railroad companies from entering this State with instrumentalities of interstate commerce and operating the same in local business, is

void because violative of the "commerce" and "due process" clauses of the Constitution of the United States. Sec. 8, art. 1, U. S. Constitution; Sec. 1, art. 14, Amendments to U. S. Constitution; Crutcher v. Kentucky, 141 U. S. 47; Telegraph Co. v. Kansas, 216 U. S. 1; Pullman Car Co. v. Kansas, 216 U. S. 56; Ludwig v. Tel. Co., 216 U. S. 146; Harrison v. Railroad, 232 U. S. 318; Railroad v. Arkansas, 235 U. S. 350. (5) The laws of Missouri authorize the incorporation of a company similar to relator. Secs. 2990, 2991, 2992, 3048, 3049, 3065, 3067, 3077, 3078, R. S. 1909; State ex rel. v. Cook, 171 Mo. 362.

*John T. Barker,* Attorney-General, and *Shrader P. Howell,* Assistant Attorney-General, for respondent.

(1) A foreign corporation can do business in a State other than that of its creation only upon complying with the terms and conditions prescribed by the Legislature thereof. Beale on Foreign Corporations, p. 156; Elliott on Railroads, sec. 30; Daggs v. Ins. Co., 136 Mo. 393; State ex inf. v. Oil Co., 194 Mo. 149; State ex rel. v. Vandiver, 222 Mo. 206; Koenig v. Railroad, 27 Neb. 703; Oil Co. v. Texas, 177 U. S. 28; Ins. Co. v. Daggs, 172 U. S. 566; Cable v. Ins. Co., 191 U. S. 307; Ins. Co. v. Prewett, 202 U. S. 246; Maine v. Railroad, 142 U. S. 227. (2) The application of the terms of the Act of 1913 to the relator will not operate as an impairment of the obligation of contract within the meaning of section 10, article 1, of the Federal Constitution. Roeder v. Robertson, 202 Mo. 535; Ins. Co. v Daggs, 172 U. S. 566; Packing Co. v. Arkansas, 212 U. S. 344. The right to complain on the ground of impairment of a contract is limited to the contractual party or the person injured by such alleged impairment. Hooker v. Burr, 194 U. S. 419; Williams v. Eggleston, 170 U. S. 304. When a transfer of a fran-

chise is made a new corporation is created, and the grantee takes subject to the laws then existing, and the right to complain must be based on the impairment of a contract executed prior to the passage of the law questioned. Owen v. Railroad, 83 Mo. 460; Denny v. Bennett, 128 U. S. 489; State ex rel. v. Lesueur, 145 Mo. 328; Rockwell v. Railroad, 51 Conn. 401; Railroad v. Commissioners, 112 U. S. 621; Pullman Car Co. v. Railroad, 115 U. S. 594; Lehigh Co. v. Easton, 121 U. S. 391; Baldwin's Am. R. R. Law, sec. 12, p. 39. But even if relator were operating under a franchise acquired at the foreclosure sale, still the State would not be deprived of its right to enact legislation under its police powers to regulate the exercise of such franchise rights. State ex inf. v. Oil Co., 218 Mo. 377; State ex rel. v. Vandiver, 222 Mo. 223; Ins. Co. v. Prewett, 202 U. S. 246; Packing Co. v. Arkansas, 212 U. S. 345; Baldwin's Am. R. R. Law, p. 213; Railroad v. Ohio, 173 U. S. 296; Railroad v. Emmons, 149 U. S. 367; Railroad v. Bristol, 155 U. S. 571. (3) The Act of 1913 does not in any manner take away, abridge or interfere with the right of relator to carry on interstate commerce and therefore does not impinge upon the provisions of section 8, article 1, of the Federal Constitution. State ex inf. v. Oil Co., 218 Mo. 376; State v. Railroad, 239 Mo. 296; Pac. Exp. Co. v. Seibert, 142 U. S. 349; Railroad v. Arkansas, 235 U. S. 350; 2 Elliott on Railroads, sec. 690; Express Co. v. Minnesota, 223 U. S. 335. Although State legislation may incidentally affect interstate commerce, yet that fact alone does not render such legislation invalid. People v. Railroad, 104 Ill. 476; Quachita v. Packet Co., 121 U. S. 44; Mobile Co. v. Kimball, 102 U. S. 691; Railroad v. Illinois, 118 U. S. 564; Glue Co. v. Glue Co., 187 U. S. 616. (4) The act in question does not violate the fourteenth amendment to the Federal Constitution, which prohibits the taking of property without due

process of law. Roeder v. Robertson, 202 Mo. 535; 8
Cyc. 1116; Ins. Co. v. New York, 119 U. S. 119; Railroad v. Bristol, 151 U. S. 571.

GRAVES, J.—Original action in mandamus.
against the Secretary of State. The relator, Wabash
Railway Company, is a new corporation, organized under the laws of Indiana, in October, 1915, and more
particularly under the Act of March 3, 1865, of that.
State. The petition has been treated as and for the
alternative writ, and a demurrer has been filed thereto,.
which reads:

"Now at this date comes the respondent, Cornelius Roach, Secretary of State of the State of Missouri,.
and after entering his appearance and waiving the
issuance of an alternative writ in this case, demurs to
the petition of relator for the following reasons:

"1st. Because said petition does not state facts.
sufficient to constitute a cause of action.

"2nd. Because it appears upon the face of relator's petition that relator is not entitled to the relief
asked.

"3rd. Because under the law of Missouri, as enacted
by the Legislature of said State and approved April
16, 1913, relator cannot operate a railroad in the State
of Missouri and transport passengers or freight from
one point in the State to another point in the State unless relator is incorporated under the laws of the State
of Missouri, and upon the face of relator's petition it
appears that it is not thus incorporated.

"4th. Because under the laws of the State of Missouri relator is not entitled to a certificate to do business in the State of Missouri.

"5th. Because the laws of the State of Missouri
do not authorize the formation of a corporation of a.
character similar to that of the relator.

267 Mo. 20

"Wherefore, respondent prays the court to quash the alternative writ and to deny relator the relief asked and for such further orders as to the court shall seem just and proper."

The petition is one of great length, but counsel for relator has fairly summarized its pertinent features thus:

"The relator is a railroad corporation organized under the laws of the State of Indiana, and particularly under an act approved March 3, 1865, by which it was provided in substance and in part:

"(1) That a railroad situated in Indiana and other States, may be sold as an entirety under foreclosure of a mortgage, at one time and place.

"(2) That the purchasers at such a sale, by filing a certificate as therein provided, may form a new corporation and become a body corporate, 'with power to sue and be sued, contract and be contracted with, and maintain and operate the railroad in the said certificate named, and transact all business connected with the same.'

"(3) That 'such corporation shall possess all the powers, rights, privileges, immunities and franchises in respect to said railroad, or the part thereof purchased as aforesaid, and all of the real and personal property appertaining to the same, which were possessed or enjoyed by the corporation that owned or held the said railroad, previous to such sale, by virtue of its charter and amendments thereto and other laws of this State, or of any State in which any part of said railroad is situated, not inconsistent with the laws of this State.'

"(4) That 'said corporation shall have capacity to hold, enjoy and exercise, within other States, the aforesaid faculties, powers, rights, franchises and immunities, and such others as may be conferred upon it by any law of this State, or of any other State in which

any portion of its railroad may be situated, or in which it may transact any part of its business.'

"Relator was incorporated for the purpose of acquiring, owning, maintaining and operating the Wabash Railroad, and acquiring owning and exercising the franchises pertaining to it.

"With a view to laying a foundation for our contentions, we will indicate briefly the facts stated in the petition.

"By the Acts of 1851 (Laws 1851, page 483), as amended by the Act of 1853 (Laws 1853, page 323) and the amendatory Act of 1865 (Laws 1865, pages 89, 90), the State of Missouri created the North Missouri Railroad Company, and granted to it, its successors and assigns, the franchises, rights and privileges to locate, construct, own, maintain and operate a railroad as a common carrier for hire, and it accordingly thereafter constructed or acquired, maintained and operated as a common carrier for hire substantially the lines of the Wabash Railroad, now existing in Missouri.

"On October 1, 1868, pursuant to express power conferred by said acts, the North Missouri Railroad Company mortgaged its railroad, franchises, rights and privileges, which were sold, pursuant to said mortgage, to one Jessup, acting for himself and his associates, who, on January 2, 1872, conveyed said railroad, franchises, rights and privileges to the St. Louis, Kansas City & Northern Railway Company (hereinafter called the Northern Company), a Missouri railroad corporation organized for the purpose of acquiring, owning, maintaining and operating said railroad as a common carrier for hire.

"On August 14, 1879, the Northern Company, pursuant to the provisions of what are now sections 3077-8, Revised Statutes 1909, entered into a contract of consolidation with the Wabash Railway Company, a consolidated corporation organized under the laws of the

States of Illinois, Indiana and Ohio, which owned substantially the lines of the Wabash Railroad east of the Mississippi River as they now exist, and the franchises, rights and privileges to maintain and operate the same as a common carrier for hire.

"By virtue of this consolidation the Wabash lines east and west of the river were consolidated or unified, so that the two railroads became a single, continuous railroad, and the rights, privileges and franchises granted by the above States to the constituent companies were unified so that they pertained to each and every part of the continuous railroad, and the contract vested this road and the rights, privileges and franchises pertaining thereto, in the consolidated corporation, the Wabash, St. Louis & Pacific Railway Company.

"On June 1, 1880, the Wabash, St. Louis & Pacific Railway Company, pursuant to express power, mortgaged its railroad, rights, privileges and franchises, which were thereafter, pursuant to said mortgage, sold to a purchasing committee. The purchasing committee caused a railroad corporation to be organized under the laws of each of the States of Missouri, Illinois, Indiana, Michigan and Ohio, and conveyed to each of said corporations the railroad, rights, privileges and franchises local to the State in which it was organized.

"In May, 1889, these several corporations entered into a contract of consolidation pursuant to what are now sections 3077-8, Revised Statutes 1909, and the laws of said other States, and thereby formed The Wabash Railroad Company and vested in it the consolidated or continuous railroad and the unified rights, privileges and franchises to own, maintain and operate the same as a common carrier for hire.

"On December 26, 1906, The Wabash Railroad Company, pursuant to express power conferred by all

of said States, mortgaged its railroad, rights, privileges and franchises, and thereafter made default, and appropriate proceedings were instituted in the Federal court at St. Louis, Missouri, to foreclose the mortgage. A decree was entered on January 30, 1914, wherein it was adjudged that the mortgaged railroad, rights, privileges and franchises 'were indivisible, of such a nature, and so situated' that they should be sold as an entirety, and they were, pursuant to said decree, sold as an entirety to a purchasing committee, who organized relator corporation pursuant to the Indiana act hereinbefore set out. The purchasers assigned to relator their bid, and pursuant to the decree of foreclosure a special master conveyed to relator the Wabash Railroad and the rights, privileges and franchises pertaining thereto.

"Thereafter, on October 23, 1915, on the coming in of the special master's report that the purchasing committee had assigned its bid to relator, and that he had, accordingly, conveyed the Wabash Railroad and franchises to relator, an order was entered, approving and confirming the master's report and adjudging relator to be the assignee of the purchasing committee.

"On November 1, 1915, relator entered into the possession, use and enjoyment of the Wabash Railroad and the rights, privileges and franchises pertaining thereto, and shortly thereafter tendered to the Secretary of State, for filing in his office, a copy of its charter or certificate of incorporation duly authenticated by the Secretary of State of Indiana, together with a sworn statement under its corporate seal, setting forth the business in which it was engaged in Missouri, viz., that it owned the Wabash Railroad and the franchises pertaining thereto, was operating same as a common carrier for hire, and was exercising or would exercise all the rights and privileges vested in it by virtue of said special master's deed and by the law under which

it was incorporated; and also a statement of the proportion of the capital stock represented by its property and business transacted in Missouri, and other statements required by law, and also tendered to the Secretary of State $19,671.50, being the corporation tax and fees due from relator to the State of Missouri, and demanded that he issue to relator a permit or license to do business in Missouri. No point is made on the form of the statement, and it is agreed that the amount of money tendered is correct.

"The Secretary of State refused to file the papers and accept the money for reasons heretofore stated.

"It is also conceded that relator has kept its said tender to the Secretary of State good by insisting continuously on the filing of said documents and the acceptance of said money."

The facts well pleaded stand confessed by the demurrer as a matter of law. Among others, the following pertinent propositions are suggested: (1) Does the Act of 1913 apply to this relator, and (2) if it does, is it violative of constitutional provisions?

I. The real foundation of respondent's objection to granting a license to relator is evidently our Act of 1913 (Laws 1913, p. 179), which reads:

"That no railroad corporation, whether steam, street, electric, transfer or terminal, except one incorporated and chartered in and under the laws of the State of Missouri, shall be authorized or permitted to carry passengers or freight of any kind from one point in this State to another point in this State."

The foregoing is section 1 of the act. Sections 2 and 3 of the act are penal in character, and provide penalties and fines as to violators of the act.

It stands admitted by the pleadings that the predecessors in title to the railway lines involved here

had the right or franchise (given them by this State) to do an intrastate business. The franchises of a railway company are divisible into two classes: (1) The mere right of being a body corporate and (2) all other grants of power or privileges by the sovereign power. The first is not subject to barter and sale, but those rights and privileges falling within the second division, supra, are subject to barter and sale. In this case among those rights or franchises, was the right to carry passengers and freight from point to point in Missouri; in other words, was the right to do an intrastate business as a railroad. This franchise or right was subject to sale or mortgage along with the physical property. This right or franchise was first granted to the "North Missouri Railroad Company, its successor or assigns," by the State. Under a mortgage sale this right passed to Jesup and associates, who in turn assigned it to the St. Louis, Kansas City & Northern Railway Company. By law this corporation, a Missouri product, was authorized to consolidate with other corporations of like character, and in 1879, did consolidate with railroad corporations east of the Mississippi River, having a line running to such river opposite the Missouri side of such river. This consolidation was under the name of Wabash, St. Louis and Pacific Railway Company. The franchise right to do intrastate business passed to this consolidated company, both by virtue of our laws and our Constitution. By foreclosure sales these rights passed from the Wabash, St. Louis and Pacific Railway Company to "The Wabash Railroad Company," where they remained until in 1915, when by virtue of a mortgage foreclosure sale they passed to the relator herein.

That the franchise rights of the old North Missouri Railroad Company, passed through Jesup to the St. Louis, Kansas City & Northern Railway Company,

*Margin note:* **Mortgage and Sale of Franchise Rights.**

has been twice held in this State. [Daniels v. St. Louis, Kansas City & Northern Railroad Co., 62 Mo. 43; State ex rel. v. St. Louis, Kansas City & Northern Railway Co., 3 Mo. App. l. c. 193.] It should be noted that this was a sale under a mortgage at which Jesup acquired the rights which he afterward conveyed.

Besides these express authorities in this State, it seems to be the general rule that at a foreclosure sale, where the franchise rights have been conveyed by the mortgage, all such franchise rights will pass to the purchaser, save and except the mere right to be a corporation. [Daniels v. Railroad, 62 Mo. 43; State ex rel. v. Railroad, 3 Mo. App. l. c. 193; Railroad v. Delamore, 114 U. S. l. c. 510; Julian v. Central Trust Co., 193 U. S. l. c. 106.]

On December 26, 1906, The Wabash Railroad Company, then being possessed of the right, privileges and franchise to do an intrastate railroad business in the State of Missouri, mortgaged such rights, privileges and franchises, and these passed by the sale in 1915 to the relator.

In other words, since the building of the North Missouri railroad under the Act of 1851, there has been a State grant to a right to do intrastate business over that particular railroad, and its after-acquired and constructed portions. This was a substantial property right, and has passed successively to the divers successors of the old railroad company, and is now vested in the present relator. Every step taken, by which the right or franchise has passed from one to the other corporation, has been taken by statutory authority. The corporations were all along authorized to mortgage their roadbeds and other property rights, including franchise rights. The Missouri corporation had both constitutional and statutory authority for consolidation. So that if the right to do an intrastate business is one not violative of the police power of the

State, the relator here acquired a valuable existing and vested right. But more of this in another connection.

II. Whatever else may be said of the legislative grant of rights to the predecessor in title to the relator here, it is clear that by these acts the State granted the original corporation the right to do an intrastate business upon the railroad it was given authority to build and construct. Not only so, but the original act (Laws 1850-1, p. 483) further contemplated that the road to be built by the corporation then chartered by the Legislature would also do an interstate business, because in section 7 of the act, after providing for the construction of the road from St. Charles, Missouri, to the northern boundary line of the State, it is added: "With a view that the same may be hereafter continued northwardly into the State of Iowa, in the direction of Fort Des Moines, in that State."

*Police Power.*

This valuable right of doing an intrastate railroad business was a grant which the State could make. In other words, it was a proper subject-matter of a contract between the State and corporation. The charter of a corporation is its contract with the State. GANTT, J., in Mathews v. Railroad, 121 Mo. l. c. 310, said:

"It is wholly unnecessary to review the decisions which sustain the view adopted in the Dartmouth College case (4 Wheat. 518), that defendant's charter is a contract between it and the State. It has been uniformly followed by this court."

As to grants made prior to 1875, the Constitution of that year expressly recognized the validity thereof. Section 1 of article 12 reads:

"All existing charters, or grants of special or exclusive privileges, under which a bona-fide organization shall not have taken place, and business been commenced in good faith, at the adoption of this Constitution, shall thereafter have no validity."

The converse would be the case where the corporation was organized and the contemplated charter powers exercised.

It must of course be conceded that the State cannot by grant disrobe itself of its police powers, but the grant of a right to construct and build a railroad within her borders, and the further grant of the right to use such railroad in the transportation of passengers and freight, for hire, between points and places within this State, is not the exercise of the police power of the State. It has been said that such a power is an indescribable one, but we find no case where the grant to construct and use (within this State) a railroad, has ever been held to be an exercise of the police power of the State. If the State by such grant, and in addition thereto undertook to divest itself of the power to regulate such corporation in the use of the railroad, to the detriment of the health, safety and general welfare of the public, then such attempted release of the power might be invalid. For our Constitution, article 12, section 5, says:

"The exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State."

But this is not the case here. A grant of the right to do an intrastate railroad business does not of itself contravene this section of the Constitution. [Sloan v. Railroad, 61 Mo. 24; State ex rel. Haeussler v. Greer, 78 Mo. 188; Scotland County v. Railroad, 65 Mo. 1. c. 135; State ex rel. v. Laclede Gaslight Co., 102 Mo. 1. c. 486.]

The control of common carriers under and by virtue of the police power is a totally different question. The general terms of the rule pertaining to control un-

der the police power is well expressed in 8 Cyc. 874, thus:

"Common carriers have from the earliest time been controlled by police power; accordingly, railroad companies being allowed to charge only reasonable rates, the Legislature may make a valid enactment that certain maximum rates shall not be exceeded; likewise railroad companies may be compelled to make connections with other railroads suitable to the convenience and safety of the public, and to obey many other kindred regulations."

But these matters of regulation under a proper exercise of the police power do not cover the right of the State to grant the privileges to construct and operate a railroad in this State and to do intrastate business. This Act of 1913 (Laws 1913, p. 179) should be given a construction which would, if possible, save it from constitutional darts. In other words, it should be given a prospective rather than a retroactive construction. It should be construed and read as to railroads thereafter built, rather than as affecting railroads already operating in the State. It should not be so construed as to make it contravene existing rights. We have adopted this method of construction even as to constitutional provisions. [State ex rel. Haeussler v. Greer, 78 Mo. 188, supra.] We have no doubt if a foreign corporation, without a railroad in this State, and without any previous grant of rights by this State, should apply for admission to do business in this State, and ask to construct and operate a railroad in this State, that, under this law, it might be kept out of the State. But that is not this case.

In the Greer case, supra, Haeussler, the relator therein, was a stockholder in the German Savings Institution, and he and some other friendly stockholders tendered their votes for Haeussler, as director of such corporation, under the cumulative plan of voting pro-

vided for by section 6 of article 12 of the Constitution. The corporation was one created by legislative charter prior to the Constitution of 1875. Under this legislative charter the other system of voting was provided for, and the respondent Greer was elected over Haeussler. The action was by *quo warranto* to test Greer's right to hold the office. This court, through HENRY, J., said that whilst the language of the Constitution was broad enough to apply to all corporations, yet it should not be so construed as to give it retroactive action, when such would strike down existing contract or charter rights. So in the case at bar. This law should not be given an application or a construction which would strike down contract or charter rights. The relator in this case is the legal owner of certain charter rights granted by the State, i. e., the rights to own and operate a railroad in Missouri, and to do an intrastate business thereon. These rights are such as could be properly granted by the State, and do not pertain to the police powers of the State. [State ex rel. v. Laclede Gaslight Co., supra, and other cases cited.] The State cannot in the exercise of mere *assumed police powers* pass a law violative of charter rights. In the Laclede Gaslight Co. case (102 Mo. l. c. 486), BLACK, J., said:

"It is not to be doubted that there is a limit to the power of the Legislature to tie the hands of subsequent Legislatures in respect to the exercise of what is termed the 'police power.' Thus it is said: 'No Legislature can bargain away the public health or the public morals.' [Stone v. Mississippi, 101 U. S. 814.]

"But certainly there is a limit in this regard over which legislatures and municipalities cannot pass; they cannot, in the exercise of assumed police powers, violate charter contracts and overthrow vested rights. On this subject Judge COOLEY aptly says: 'The limit to the exercise of the police power in these cases must be this:

The regulations must have reference to the comfort, safety or welfare of society; they must not be in conflict with any of the provisions of the charter; and they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers. In short, they must be police regulations in fact, and not amendments of the charter in curtailment of the corporate franchise.' [Cooley, Const. Lim. (5 Ed.), 712]."

This and the other cases cited announce the proper general rules, but they may not accord fully with the present line of demarcation between the police and other powers of the State. Some of these cases discuss rates allowed by State grant. The modern rule as to grants of this character, is that they fall within the category of regulatory measures in the interest of the general public welfare, and therefore are within the police power of the State. But we repeat, the grant of the right to construct and own a railroad in Missouri and to do an intrastate business thereon is not such a right as falls within the police power of the State.

We hold therefore that the Act of 1913 should not be given a construction which would make it strike down the vested rights of relator or other corporations similarly situated. We hold that it has no application to a corporation which in due course has acquired the right to own and operate a railroad in this State for the doing of intrastate business, which right to so own and operate such road has been previously granted by this State.

III. If this Act of 1913 is to be construed as contended for by the State officials it would be violative of several constitutional provisions. It would be the taking of valuable property rights without due process of law. It would be the striking down of contract

**Due Process of Law.** rights in violation of both the State and Federal Constitutions. This relator, as to these contract rights, stands in no different situation than do the other foreign corporations now owning and operating railroads in this State. The other foreign corporations now operating railroads in this State in intrastate business, are doing so by virtue of grants heretofore made. The only difference is (and in law that is no difference) the relator has but recently acquired these rights, whilst the others have possessed them for some years.

It is a fundamental rule that a statute should be so construed, if possible, as to make it valid under all constitutional provisions. As previously said, if a foreign corporation, possessed of no contract or charter rights from this State, should apply for license to do business in this State, and to construct and operate a railroad therein, the Act of 1913 would apply and prevent such a corporation from coming into the State. The State, save where it has previously granted the right, can stop any foreign corporation at the State line. The law, whether wise or otherwise, seems to have that effect, but it should not be construed to apply to corporations owning or legally acquiring railroads already in the State, where, in the acquisition of them, they also acquire the franchise right to do an intrastate as well as other business in the State. We so construe this act. To otherwise construe it, would make it violative of more than one constitutional provision, both of State and Federal Constitution.

It follows that the alternative writ of mandamus should be made peremptory, and the respondent herein required to accept and receive the license fees tendered, and issue to relator a license to continue the business of its railroad in this State. It is so ordered. All concur except *Walker, J.,* absent, and *Woodson, C. J.,* who dissents in opinion filed.

WOODSON, C. J. (dissenting)—That portion of the plaintiff's railway lying in this State was constructed and owned by a Missouri corporation, and was so owned at the date of the adoption of the Constitution of this State in 1875; and that being so, the plaintiff and those through whom it claims took that part of the road located in this State with all the rights, powers, duties, burdens and limitations granted and imposed upon it by the Constitution and laws of this State.

At the date of the consolidation of the roads mentioned in the majority opinion, under the name of the Wabash Railway Company, section 18 of article 12 of the Constitution of 1875 was in full force and effect. It reads as follows:

"Sec. 18. *Consolidation with foreign companies.*— If any railroad company organized under the laws of this State shall consolidate, by sale or otherwise, with any railroad company organized under the laws of any other State, or of the United States, the same shall not thereby become a foreign corporation; but the courts of this State shall retain jurisdiction in all matters which may arise, as if said consolidation had not taken place. In no case shall any consolidation take place, except upon public notice of at least sixty days to all stockholders, in such manner as may be provided by law."

According to the plain letter and spirit of this constitutional provision, the company which owned that part of the road lying within this State at the date of said consolidation remained and still remains a domestic corporation, and its property, rights and duties, in so far as intrastate transportation is concerned, remain subject to and are governed by the laws of this State to the same extent as if the consolidation had never taken place.

The consolidations mentioned become new companies, so is this reorganized company. [State ex rel. v. Keokuk & W. Ry. Co., 99 Mo. 30; State ex rel. v. Chicago, Burlington & K. C. Ry. Co., 89 Mo. 523.]

But that is not true regarding interstate commerce, for under both the State and Federal Constitutions, as well as under the statutes of this State authorizing the consolidation of the railroads of this State with those of other States, those parts of the consolidated road situate in Missouri are authorized and required to carry interstate commerce; and consequently the Act of 1913 (Laws 1913, p. 179) does not and could not apply to that character of commerce. [State ex inf. v. Standard Oil Co., 218 Mo. 1, l. c. 376.]

In other words, in my opinion, in construing said Act of 1913 we must view that part of plaintiff's road located in this State from two aspects, viz.: First. That as a matter of law the Missouri company still owns the physical property and possesses all the rights, powers and privileges it possessed, and owes all the duties to the public imposed upon it prior to the date of its consolidation with the plaintiff, in so far as intrastate shipments are concerned. Second. That said company, property, rights, powers and privileges are subjected by said statutes and constitutional provisions to the paramount duty of carrying interstate commerce, but not totally destroyed, as I understand the majority opinion in effect holds.

If I am correct in the foregoing observations, then the Act of 1913 is only applicable to intrastate commerce and is valid in that regard.

I am, therefore, of the opinion that the alternative writ of mandamus should be quashed.