TRUSTEES OF WILLIAM JEWELL COLLEGE OF LIBERTY, MISSOURI, a Corporation, v. SAM BEAVERS, Collector of Revenue of Worth County, Missouri, Appellant.—No. 37789.—171 S. W. (2d) 604.

Court en Banc, January 29, 1943.

Rehearing Denied in Opinion, April 5, 1943.

Rehearing on Opinion of April 5, 1943, Denied, June 3, 1943.

*Jennings B. Beavers, Du Bois & Miller* and *J. F. Allebach* for appellant.

88

*Frank E. Atwood* and *Lawson & Hale* for respondent.

90

*William E. Kemp,* City Counselor, and *Arthur R. Wolfe,* Assistant City Counselor, *amicus curiae.*

 HYDE, C.—This is an action in equity seeking to have de-. clared void real estate taxes assessed against land owned by plaintiff in Worth County; and also asking that defendant be enjoined from enforcement by sale to collect such taxes. The trial court found for plaintiff and entered a decree granting the relief sought. Defendant has appealed.

William Jewell College was chartered by special act of the Legislature in 1849. (Laws 1849, p. 232.) At the next session, in 1851, another act was adopted concerning William Jewell College. (Laws 1851, p. 64.) These acts were considered and construed in State ex rel. Waller v. Trustees of William Jewell College, 234 Mo. 299, 136 S. W. 397. The 1849 act is summarized therein (234 Mo. 1. c. 315) and the 1851 act is set out in full (234 Mo. 1. c. 311); also the report of the Committee on Education at the 1850-51 session appears in the dissenting opinion (234 Mo. 1. c. 324) and shows that this Committee in 1850 recommended the adoption of the later act finally adopted in 1851.

The case was submitted upon an agreed statement of facts, which (omitting the legislative acts hereinabove mentioned) was, as follows:

"The plaintiff is a corporation organized under the name of 'Trustees of William Jewell College,' of Liberty, Missouri, and that it has been such corporation continuously since February 27, 1849, when it was organized by an Act of the Legislature; . . . that the college generally known as 'William Jewell College' belongs to the corporation of Trustees of William Jewell College; that the said college was located in Liberty, in Clay County, Missouri, on August 21, 1849, by a certificate showing the name and location of the College, which was duly filed in the office of the Recorder of Deeds for Clay County, Missouri, on August 25, 1849, in accordance with the provisions of the said incorporating act; that at the time the act was passed the College had not been definitely located but was to be located by a certificate setting out the name and location of the College, and that was accordingly done; that since on or about August 25, 1849, the plaintiff has conducted a College in Liberty, Missouri, in conformity with said act, and that its property has been, and now is used for the purpose of conducting said College exclusively and not for private gain or emolument as to any person or corporation, and that its work is solely educational. . . .

"That the plaintiff accepted the said charter from the State of Missouri during the year 1849 and at said time started operating as a corporation thereunder; that thereafter and prior to the year 1851, while the plaintiff was operating as such corporation the plaintiff

acquired title to lands in the Counties of Clay County, Mercer and Sullivan in the State of Missouri; that a purpose of said Act of 1851 was to exempt the property and lands then held or thereafter to be acquired by the plaintiff, and other institutions of learning, from taxation. . . .

"That the Trustees of William Jewell College takes title to land by foreclosures of mortgages in some instances, or in payment of mortgages or deeds of trust, but that it does not invest its endowment and other funds in purchasing real estate as an investment, except to protect its loans, and that it does not hold real estate that it takes in payment of, or on foreclosure of, mortgages longer than is necessary in order to procure a proper sale of the same and in order to protect its rights and finances; that the land mentioned in the suit above was obtained by the Trustees of William Jewell College on May 16, 1933, the date of the acknowledgment of said deed, and the deed was afterward recorded in Book 81 at page 471 of the Deed Records of Worth County, Missouri, in which said land lies, and that said deed was made to the Trustees of William Jewell College in settlement for mortgage for money loaned to the makers of said deed, Martha D. Elliott and John R. Elliott, her husband, and which was secured by mortgage on the same real estate so conveyed to the college.

"It is further stipulated and agreed that in the levying of the taxes against said land involved in said suit, the various steps necessary to be taken under the law assessing [606] and levying taxes were taken in this case, and that if said land is taxable, the proper steps have been taken and the taxes are valid, and that the only question at issue between the parties hereto is the liability of said real estate for taxes during the time it is owned by the Trustees of William Jewell College, and whether it is exempt from taxation or not during the ownership of said college;" (and) "that no part of the land herein described and involved is claimed to be exempt from taxation under the Constitution of 1875 and Section 9743 of the Revised Statutes of Missouri, 1929, and that no part of said land is claimed as the five acre tract or lots that was thereby exempted."

Defendant's contention is that: "the legislative charter granted the respondent in the year 1849 constitutes the only contract between the State of Missouri and the respondent and this contract contains no provisions relieving the respondent from the payment of taxes;" that "the Tax Exemption Act of 1851 did not constitute a contract between respondent corporation and the State of Missouri and the people and the Legislature have at all times retained the full right and authority to repeal it;" and that "the Act of 1851 was repealed by the Constitutions of 1865 and 1875 and by subsequently enacted Statutes."

The theory of plaintiff and the trial court was thus set out in the findings of the court:

"Plaintiff is, . . . a non-profit educational corporation duly organized and existing under, pursuant to and by virtue of an Act of the General Assembly of the State of Missouri, approved February 27, 1849, entitled 'An Act to Charter a College in the State of Missouri,' (Laws 1849, p. 234) and as amended and amplified by an Act of the General Assembly of the State of Missouri, approved on February 22, 1851, (Laws 1851, p. 64) and that pusuant to and in compliance with its charter powers, plaintiff has received, and is now receiving by donation, gift, grant, devise and bequest, lands and money, which it has at all times used, and is now using, for the sole purpose of maintaining and conducting William Jewell College at Liberty, Missouri, and thereby has been, and now is, carrying a part of the burden of education of the state and performing a distinct public service to the State of Missouri;" and "that under and by virtue of the provision of the aforesaid charter of plaintiff corporation all real estate by it owned, including that hereinabove described, was and is, so long as owned by plaintiff, exempt from liability for all taxes and assessments."

Plaintiff points to the following provision, Section 13 of the 1849 Act, and says that it was intended by the Legislature to be a complete tax exemption, to-wit: "That the property, real and personal, authorized to be held by said corporation by virtue of this Act, shall be held and applied in good faith to the purposes of education according to the provisions of this Act and for no other or different purpose." Plaintiff also says that Section 1 of the 1851 Act was intended to be a clarifying amendment making the intended exemption plain. It provided: "That all the land and improvements thereon now owned by the 'William Jewell College' in the counties of Clay, of Grundy, Mercer and Sullivan, and all the lands that may hereafter be granted or devised to said college, or any other institution of learning in this state, for the benefit of education, be, and the same are hereby exempted from all taxes and assessments so long as said lands may be owned by said college." If these two acts are construed together so that these provisions of both acts can be considered together as part of plaintiff's charter (as they were by the trial court) then this exemption provision of its charter (when accepted and acted upon) constituted a contract with the state, which was protected under Section 10 of Article I of the United States Constitution. [Washington University v. Rouse, 8 Wall. 439, 75 U. S. 439, 19 L. Ed. 498; Home of the Friendless v. Rouse, 8 Wall. 430, 75 U. S. 430, 19 L. Ed. 495; Washington University v. Baumann, 341 Mo. 708, 108 S. W. (2d) 403; Washington University v. Gorman, 348 Mo. 310, 153 S. W. (2d) 35; appeal dismissed, 316 U. S. 98, 62 S. Ct. 962, 86 L. Ed. 895.]

94

In State ex rel. Waller v. Trustees of William Jewell College, 234 Mo. 299, 136 S. W. 397, this Court en Banc did construe these two sections together. The principal question there was whether the tax exemption went beyond real estate owned and included all property; although this same claim of repeal of this exemption by the 1865 and 1875 Constitutions was also made and that would have subjected all property to taxation. This court therein said of Section 13 of the 1849 Act, that it was "a legislative declaration [607] . . . to the effect that the property of this corporation was to be devoted to a public purpose;" that, in no other charter of that period, are "the funds of the institution so completely impounded for public purposes as in the charter before us"; that "it has always been the law that property used for state, county, municipal and other public purposes should not be taxed"; and that "there would have been no special reason for limiting the use of the property of this corporation strictly to educational purposes, except upon the theory that there was a public purpose and some immunities might be expected from the state." The court then held that "the original act authorized the gathering together of an endowment for the college"; that "the fund thus collected was limited to a use which the State not only recognized as a public use, but one which the State should foster and aid" (under then existing constitutional provisions); and that "when all the surroundings are considered, the public policy of the State considered, these two acts considered, and other acts about the same time are considered, it is evident that there was a legislative intent to relieve the property constituting the endowment fund of this corporation from the burdens of taxation."

As to the contention made in the Waller case, that the exemption had been repealed by subsequent constitutional and statutory provisions, this court therein held that "the question, however, has been fully settled by the adjudications of this court upon similar statutes, and we shall not re-open nor re-argue it." This court then cited St. Vincent's College v. Schaefer, 104 Mo. 261, 16 S. W. 395; State ex rel. v. Westminster College, 175 Mo. 52, 74 S. W. 990. Neither of the concurring opinions nor the dissenting opinion questioned this ruling of the majority. In the St. Vincent's College case, the original charter act was adopted in 1843 while the tax exemption was enacted in 1853 and it was given the same effect by this court as if it were a part of the charter, which could only be true if the later act did become a part of the charter. This case has never been overruled or even questioned. Even in the case of Washington University the original charter (which gave exemptions) was granted to The Eliot Seminary in 1853, and this was appended in 1857 by an act changing the name to Washington University, which Corporation was given all "immunities and privileges conferred upon and belonging to the Eliot Seminary." (108 S. W. (2d) l. c. 405, and l. c. 409.) Likewise,

in Northwestern University v. People of Illinois, 99 U. S. 309, 25 L. Ed. 387, "the University was incorporated by an Act of the Legislature of the State of Illinois, approved January 28, 1851"; while its exemption from taxation was in an Act of 1855, "by an amendment to this charter" (of 1851) which "appointed three additional trustees, and enlarged its powers, in some respects not very important." There the stipulated facts showed that the corporation expended, "for the promotion of the objects stated in and contemplated by the Act of Incorporation, over $200,000, realized from donations . . . and has built up a University with several departments of learning," after the 1855 amendment to its charter. The United States Supreme Court said that it was "a fair inference" that "there was such acceptance of this Act of 1855, and such investments made on the faith of it, that at least some portion of the property now in question is protected by the contract, if the exemption clause lawfully covers it"; and held that the lots, sought to be taxed, were "within the class of property which by the Constitution of 1848 the Legislature could, if it deemed proper, exempt from taxation, and that the Legislature did so exempt it."

We think that the situation here is substantially the same. The present constitutional legislative requirements of specific titles to acts and other details to be observed in enactment of laws and amendments to laws were not in force in 1851. [See Article 4, Sections 24-42, Constitution of Missouri.] The Act of 1849 stated that "the United Baptists in Missouri and their friends are desirous of endowing and building up a college in the State, and for that purpose have under the direction of the General Association of Baptists in Missouri already secured pledges to the amount of about twenty thousand dollars, for the endowment of the same in shares of forty-eight dollars, each payable in installments of six dollars per share annually." This college was located at Liberty late in 1849. During the very next year, 1850, when Legislature began its next session, the Trustees came before it with a petition showing about 4000 acres of land "had been donated to them for the [608] cause of education," and asked for tax exemption. Early in 1851, the 1851 Act was adopted granting exemption, which this court in the Waller case construed to have intended exemption of all property constituting the endowment of the college. Since the 1849 act contemplated an eight-year period for collecting the original endowment, it is obvious that the college could not have completed its arrangements by February, 1851, for operation of the kind of institution contemplated when the 1851 act was adopted; that the Legislature was petitioned as soon as possible and acted promptly to make an exemption definite; and that acceptance by substantial performance according to the terms of both acts was thereafter actually made. In these circumstances, it seems reasonable to consider the two acts together as constituting plaintiff's entire

charter and its acceptance as such. This is the import of the ruling in the Waller case, and there can certainly be no question about plaintiff's good faith and full performance of all obligations imposed by such charter, as found by the trial court.

Our Constitution (1875) was adopted after the decision of the Supreme Court in the Washington University and Home of the Friendless cases, supra. It prohibited the granting of tax exemptions by the Legislature (Art. 10, Sec. 2); and declared that laws granting exemptions beyond those specifically authorized by it "shall be void." (Art. 10, Sec. 7.) Thus future exemptions such as those under consideration here and in the Washington University cases cannot be made. However, this Constitution does not specifically undertake to abolish such exemptions made before its adoption, but only provided, in Art. 12, Sec. 1, that "all existing charters, or grants of special or exclusive privileges, under which a bona fide organization shall not have taken place, and business been commenced in good faith, at the adoption of this Constitution, shall thereafter have no validity." This court said in State ex rel. Wabash Ry. Co. v. Roach, 267 Mo. 300, 1. c. 314, 184 S. W. 969, that "the converse would be the case where the corporation was organized and the contemplated charter powers exercised."

Defendant relies principally upon Grand Lodge of Louisiana v. New Orleans, 166 U. S. 143, 41 L. Ed. 951. However, this case was cited to this Court en Banc in the Waller case (234 Mo. 1. c. 302) but this court held that the question was ruled by the St. Vincent's College case. We have already pointed out the similarity between that case and this one. In the Grand Lodge case, the tax exemption statute was enacted 39 years after the charter had been granted and two years after the building exempted was acquired. It did not involve an educational institution open to all. The situation as to consideration for a contract was very different from that in this case, where the endowment which would make it possible to operate the College was still in the process of being obtained. The view of this court in the Waller case must have been that the exemption thus became a part of the original charter by amendment and clarification of Section 13 and was made "for the purpose of inducing the incorporators to accept the charter and to carry out the enterprise," as suggested in the Grand Lodge case in distinguishing Home of the Friendless v. Rouse, supra. Defendant also cites the provision, of the general corporation laws of 1845, that "the charter of any corporation that shall hereafter be granted by the Legislature, shall be subject to alteration, suspension, and repeal, in the discretion of the Legislature." (Rev. St. Mo. 1845, p. 232, ch. 34, art. 1, sec. 7.) However, since the Legislature then had power to enact special laws, one Legislature has no authority to bind a succeeding one so that it could not place in special charters provisions inconsistent with general

statutes. Accordingly, it has been held that while provisions of the general law "confer certain powers and privileges and impose certain duties and liabilities in the absence of any stipulations or provisions inconsistent with those, contained in special charters subsequently granted"; nevertheless "where such inconsistencies occur in subsequent legislation, it must be understood that previous retrictions were intended to be removed, for reasons satisfactory to the Legislature." [Scotland County v. The Missouri, Iowa & Nebraska Railway Co., 65 Mo. 123, 136, 137; in Washington University v. Rowse, 42 Mo. 308, l. c. 325, this same view was expressed.] While the dissenting opinion of Justice Miller (19 L. Ed. l. c. 500) suggested that the doctrine that any Legislature could "bargain away forever **[609]** the taxing power of the State . . . must finally be abandoned," (as this court had held, see 42 Mo. 308) nevertheless it has not yet been abandoned by the United States Supreme Court and we must follow its decisions as to the meaning and effect of the constitutional provision invoked.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by HYDE, C., in Division One is adopted as the opinion of the Court en Banc. *Hyde, Tipton, Clark* and *Douglas, JJ.,* concur; *Leedy, J.,* dubitante; *Ellison, C. J.,* dissents; *Gantt, J.,* absent.

## ON MOTION FOR REHEARING.

HYDE, J.—Defendant's motion for rehearing, as did its brief en Banc (also brief of amicus curiae), stresses the provision of the general corporation laws of 1845 (R. S. 1845, p. 232, Ch. 34, Art. 1, Sec. 7) making charters "subject to alteration, suspension, and repeal in the discretion of the legislature." Seton Hall College v. South Orange, 242 U. S. 100, 37 S. Ct. 54, 61 L. Ed. 170, and Covington v. Kentucky, 173 U. S. 231, 19 S. Ct. 383, 43 L. Ed. 679, are cases cited as authority for the proposition that this statute became a part of the plaintiff's charter and contract, and was a reservation of the right to repeal its tax exemption. [Citing also Missouri cases: Watson Seminary v. Pike County Court, 149 Mo. 57, 50 S. W. 880; Gregg v. Granby Mining & Smelting Co., 164 Mo. 616, 65 S. W. 312.]

This contention was not fully discussed in the Divisional opinion because defendant's principal contention in the trial court, and before Division One, was that the Act of 1851 was no part of plaintiff's charter and therefore the tax exemption was not contractual at all. This latter point is also reargued in the motion for rehearing. We held that it was "reasonable to consider the two acts together as constituting plaintiff's entire charter and its acceptance as such," and we adhere to that ruling.

The point of reservation of the right of repeal is thus stated:

"Even if the Court should hold that the provisions for tax exemption in the Act of 1851 were contractual, the Court must hold that such tax exemption was revocable under the reserved power to alter, suspend or repeal contained in the corporation law under which the college was chartered and which statutory reservation became a part of the charter."

However, even this contention would not change the result we have reached. Defendant assumes that this tax exemption was repealed by the adoption of the Constitution of 1865 and 1875. However, this court held in Scotland County v. Missouri, Iowa & Nebraska R. Co., 65 Mo. 123, that the provision of the 1865 Constitution prohibiting tax exemptions (Sec. 16, Art. 11) "was evidently designed to be prospective and not retrospective in its operation, and it would be an unjust imputation on the Convention which framed that Constitution to infer that they designed that section to operate upon existing rights." This ruling was approved and followed in State ex rel. Dosenbach v. St. Joseph's Convent of Mercy, 116 Mo. 575, 22 S. W. 811.

In the Convent of Mercy case, this court held that the same thing was also true of the provisions of the Constitution of 1875, saying:

"We are unable to see why the Constitution of 1875 should receive, as to these sections, a different construction from that of 1865. As to prospective legislation, they are both clear and specific, but in neither do we discover any intention that they should act retrospectively. . . .

"It would be violative of this almost universal canon of construction to hold that these general affirmative provisions should have a retroactive effect, and that they repeal this exemption under the general language of the Constitution in the section quoted."

This ruling as to the effect of the provisions of both Constitutions was again approved and followed in State ex rel. Morris v. Board of Trustees of Westminster College, 175 Mo. 52, 74 S. W. 990. Furthermore, as we pointed out in the Divisional opinion, the Constitution of 1875 provided what is in effect a savings clause (Sec. 1, Art. 12) to preserve [610] "existing charters, or grants of special or exclusive privileges," when at the time of its adoption "the corporation was organized and the contemplated charter powers exercised." Therefore, whatever may be the power of the state to repeal plaintiff's tax exemption under the reservation in the general corporation law of 1845, it did not do so by adopting the Constitutions of 1865 and 1875, or by general statutes enacted for the purpose of carrying out the provisions of those Constitutions.

In the Granby Mining Company case, supra, the corporation had amended its original charter 30 years later, after the adoption of the 1875 Constitution, and the real basis of the decision was that this change and extension of its business thereunder estopped it from

claiming exemption from statutes passed under the authority of the provisions of that Constitution. In the Watson Seminary case, supra, the Seminary was not a private but a public corporation administered as a public trust by the County Court. "There were no private incorporators, share or stockholders" and "the control of the state is perpetuated as long as the charter is effectual." The court held that there could be no contract in that situation. Neither of these cases are authority for holding that there has been any repeal of plaintiff's charter or any part thereof. (See also State ex rel. Morgan v. Hemenway, 272 Mo. 187, 198 S. W. 825, where the city of Glasgow, after the adoption of the Constitution of 1875, gave up its previously granted charter to come within its general provisions.)

The motion for rehearing is overruled.