# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

### CENTRAL GRAND DIVISION.

### JANUARY TERM, 1875.

## JAMES T. COOPER *et al.*

### *v.*

## JOHN W. ASH.

1. TAXATION — *whether city charter exempts citizens from road and bridge tax.* The tenth section of the charter of the city of Alton, which makes it the duty of the city to keep the public roads and bridges in repair, and provides that all persons who shall perform the road labor therein authorized, or shall commute the same by paying one dollar for each day's labor required, shall be exempt from any other taxation under the power and authority of the county authorities, under the general road law, can not be regarded as providing for a commutation of county taxes for road and bridge purposes within the city. It is but an attempt to commute with the individuals who shall perform street labor or pay in lieu thereof, which is not within the legislative power.

2. SAME—*incorporated cities or towns in counties not under township system are exempted from county road taxes.* Under section 39 of the road law of 1873, incorporated cities and towns in counties which have not

adopted the township organization system are made road districts, and the property therein is exempted from all taxes for road purposes, except such as may be levied by such bodies themselves, to keep the roads and bridges within their limits in repair. And such law is valid, and a tax levied by the county court for such purposes on property within their limits may be enjoined.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a bill in chancery, by John W. Ash against James T. Cooper, sheriff and *ex officio* collector of Madison county, and the county court of said county, to restrain the collection of a county road tax of ten cents on each $100 valuation of ·property, which was extended on the complainant's property, òn the ground that he was a resident of the city of Alton, where his property was situated, and that the property situate in such city was exempt from county levy for road and bridge purposes. The defendants filed a demurrer to the bill, which the court overruled, and they abiding by their demurrer, the court entered a decree perpetually enjoining the collection of $13.43 of the taxes levied upon his taxable property within the city of Alton, as a road tax for county purposes. From this decree the defendants appealed.

Messrs. IRWIN & KROME, for the appellants.

Mr. CHARLES P. WISE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is contended, that by receiving and acting under the charter of the city, and assuming the burthen of making and keeping the streets, alleys and ways of the city in repair, and the provisions of the tenth section of the charter, the people residing within the city limits are exempt from the payment of all road and bridge taxes levied by county authority. That section imposes it as a duty upon the city authorities to keep

the public roads and bridges in the city in repair. It authorizes the city to call upon male citizens between certain ages to perform three days labor, each, on the roads and bridges, annually, or to pay into the city treasury one dollar for each day they shall refuse to so labor. And it provides that on payment of the money or the performance of the labor, "such residents shall be exempt from any other taxation under the power and authority of the county commissioners of Madison county by virtue of the provisions of the general road law of the State of Illinois."

It is contended that this is a commutation with the taxpayers of the citizens of Alton, for an exemption from the county road tax. We do not regard this as a commutation. If so, it is but partial and very unequal in its operation. It would only be a commutation for all road taxes levied on able bodied males, between the ages of twenty-one and fifty, who should perform the labor, or pay its equivalent in money. It would still leave all female tax-payers, all male minors, and males over the age of fifty, who are inhabitants of the city, to pay their road tax. This would not be equality as to persons or property within the municipality.

Even if it were conceded, which it is not, that the legislature may commute county or local taxes for some other consideration in lieu thereof, such commutation should operate with fairness and uniformity upon the tax-payers of the corporation with which it should be made. If this section of the charter were enforced, and all persons who performed the labor or paid the money in lieu of it were exempted from the road tax levied under the 35th section, it would leave all other property holders liable to pay the tax under this latter section. This would not be a commutation of the taxes that persons living in the city were liable to pay for road purposes levied by the county. It can amount to no more than an attempt to commute with individuals, which we are clear never was contemplated by the framers of the constitution, and is not within legislative power.

When cities, towns and villages receive charters, it is upon the theory, and of its correctness we have no doubt, that the benefits conferred on the citizens therein are equal to all the burthens imposed. That they have power to control the police of the municipality, preserve order, protect their citizens from nuisances, and adopt and enforce sanitary provisions, are, no doubt, equal to the enhanced expense in improving their streets and maintaining the city government. These are privileges and benefits not shared by citizens beyond the municipal limits. Citizens of these bodies do not cease to be citizens of the State and the county, nor do they cease to owe duties to the State and county. They, by becoming incorporated, are released from no obligation to the State or county ; they still remain liable to discharge every duty to them, precisely as they did before. They should, in justice, be required to pay taxes for the support of the State and county governments, as though they did not reside in a city. Why should citizens beyond the city limits be required to assume all of · the burthens of the county government, because the inhabitants of the city have agreed with the State that if certain powers of local self government shall be granted to them they will assume and discharge the duties annexed to and imposed upon the right to exercise the powers conferred ? Is there any injustice in requiring them to pay their due proportion of the cost of building a county court house, common jail, or in making other county improvements?

No one has the right to complain of injustice because his property is taxed to build a county bridge, although it may be in a remote part of the county and distant from his property taxed or from his residence. Taxes may be collected of a resident of Jo Daviess county, paid into the State treasury, and expended in Cairo for State purposes, and the taxpayer has no right to complain that it is unjust. The mere fact that he may never use or see the improvement, does not enter into the justice or injustice of the tax. He has a right

to insist that the tax be levied for a constitutional and legitimate purpose, and that the burthen be imposed in the mode prescribed by the constitution and under the law ; and whilst he has a right to complain if his and other representatives expend it improvidently, or for purposes of doubtful utility, still he is without power to prevent its waste, if it only be appropriated for a purpose allowed by the fundamental law. But a small portion of the State revenue is ever expended at the places where it is collected ; but, in theory at least, it is so expended as to promote the interest of the people in the aggregate.    And the same is true of counties and smaller local divisions.

The 34th section of the road law of 1873, p. 158, for counties not under township organization, provides that county courts which adopt the system of keeping up their roads by taxes in part and labor in part, shall fix the number of days each able bodied man between the ages of twenty-one and fifty, not exceeding three, shall perform on the public roads within the county during the year.    And the 39th section of the same act provides, that in any city or town which shall be incorporated under a general or special law, no requisition in labor or money from the citizens thereof on property within the corporate limits shall be required, to improve roads in the county, different from the grant in the charter; but they shall be required to work and pay a tax to improve the streets and roads, and such improvements as shall be required by the charter or within the limits of the corporation, so long as the charter remains in force.    The 29th section of the same law requires the county commissioners to lay out and divide their respective counties into such road districts as they may deem convenient and proper.

This is the policy of the General Assembly for repairing roads in counties which have failed to adopt township organization.    Under this system, the county courts are intrusted with the power to establish road districts, and the appointment of supervisors to superintend the repair of roads therein.

Had the General Assembly deemed it advisable, they could have created the several districts, and authorized the citizens in each district, by the levy of taxes and labor therein, to keep up the roads of their several districts, thus relieving them from the control of the county authorities. And in the creation of such districts, incorporated towns and cities might be designated as districts, or the legislature might have created such cities and towns districts, and have left the county commissioners to divide the balance of their respective counties into such districts. And when thus divided, the principle of .uniformity in taxation would not be violated, notwithstanding the rate of taxation in the various road districts might differ.

Such is the operation of the law in the various school districts in the State. It may be, if the General Assembly were to adopt such a system, it would be necessary to create each district a body politic for road purposes, as are the school districts for educational purposes.

The question presents itself, whether or not the General Assembly has made each incorporated city and town in counties not under township organization a road district, with the power to raise money and labor necessary to keep the streets and roads in repair. Although such corporations are not called road districts, they are virtually such. They are required to keep the streets and roads in repair, and are empowered to employ the necessary means for the purpose ; and the law is general, as it applies to all incorporated cities and towns in counties not organized under the township law. We have no hesitation in saying, that these incorporations are, under the law of 1873, made road districts, with the uniform power of keeping their streets and roads in repair, by taxation and labor.

But it is urged that the case of *O'Kane* v. *Treat*, 25 Ill. 560, announces a rule repugnant to the views here expressed. We think clearly not, but that it is in harmony with them.

Under the township organization law each township is created a road district, in fact if not in name. The roads in the township are under the control of three road commissioners, who superintend and direct the expenditure of money and labor on all public roads in the township, and levy the tax for road purposes. And inasmuch as the city of LaSalle was, for road purposes, a part of the township, its citizens, under the constitution, could not escape their ratable share of the road tax of the district; but when, under the general law, it and all other cities and towns which were incorporated became road districts, by it being enacted that the road tax levied in their limits should be paid to their treasurers, to be expended on the streets, under the direction of the city authorities, they became road districts, not under the control of the road commissioners beyond levying the road tax. See Sess. Laws, 1873, p. 168, sec. 16. This virtually makes such an incorporation a road district, distinct from the township. So of such corporations in counties under the jurisdiction of county commissioners. The one is as much a road district as the other, and no reason is perceived for adopting different rules for the two systems of county government, so far as applies to incorporated towns and cities. The fact that the corporations in counties not under township organization levy their own taxes, it being general, can not change the construction.

Perceiving no error in the record, the decree of the court below is affirmed.

*Decree affirmed.*