WILLIAM E. HAYWARD

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield, April 3, 1893.*

1. COMMUTATION OF TAXES—*power of legislature.* It is uniformly held that where the right to commute taxes exists, it is in substitution for something else in place and lieu of the tax; and, when that power exists, the legislature is the sole judge of its propriety, and its acts not being subject to review by the co-ordinate powers of the State, it must be clear that commutation was intended.

2. An act to incorporate a city, after defining the boundaries, provided that all parcels of land within the corporate limits, that exceed in extent ten acres, shall be exempt from taxation for city revenue until the same shall be subdivided into lots of ten acres or less, and each lot when so divided shall be taxed as other city lots: *Held,* that such act was not even an attempt at commutation of city taxes, but that it was only an effort, unconditionally, to make an exemption from city taxes.

3. TAXATION—*exemption by special act—repeal of the exemption.* In such case, the holder of an eighty-acre tract of land not divided into lots in the city limits, has no vested interest or right in the exemption, and the question of the taxation of his property in common with other property within the city will remain subject to the legislative control, and the legislature may repeal such clause of exemption by the passage of other laws repugnant thereto.

4. MUNICIPAL CORPORATION—*adoption of general law—effect on provisions of special charter.* When a city, whose special charter exempts from taxation, for corporate purposes, all land of ten acres and upward which is not subdivided into lots, adopts the general law of 1872 for the incorporation of cities and villages, all laws in conflict with the general law will be repealed, including the provision in the charter for the exemption of lands of ten acres or more. Such exemption is in conflict not only with the Constitution of 1870, but also with the general incorporation law.

5. The charter of the city of Pana, passed in 1867, provided that all parcels of land therein that should exceed ten acres, should be exempted from city taxation until the same should be subdivided into lots of ten acres or less. In 1876, the city organized under the general law relating to cities, etc.: *Held,* that after the change of organization, the provision in the charter could be of no validity in exempting from municipal taxes.

APPEAL from the County Court of Christian County; the Hon. VINCENT E. FOY, Judge, presiding.

Mr. J. C. ESSICK and Mr. ANTHONY THORNTON, for the appellant.

Mr. E. A. HUMPHREYS and Mr. J. C. McBRIDE, for the appellees.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is an appeal from the judgment of the County Court of Christian County, against 86 acres of land off of

the east side S. W. Qr. of Sec. 15, T. 11 N, R. 1 E, in said
county, for municipal taxes, for the year 1891, of the city
of Pana.   Appellant having paid all other taxes, the city
tax was returned, as provided by law, delinquent.   The
judgment for the tax was resisted upon the ground, that
by the special charter of the city of Pana, in force Febru-
ary 16, 1867, the property is exempt from taxation for
municipal purposes.

Section 1 of that act defines the boundaries of the city
of Pana, and includes within the incorporate limits the tract
in question.

Section 2 of the act provides, among other things, that
"all parcels of land within the aforesaid limits and bound-
aries, that exceed in extent ten acres, shall be exempted
from taxation for city revenue until the same shall be sub-
divided into lots of ten acres or less, and each lot, when so
divided, shall be taxed as other city lots."

The city of Pana became organized in the year 1876,
under the "cities and villages" act of 1872, and has since
been governed by the general law.   It is stipulated that the
boundaries of the city have not been changed from those
fixed by its special charter; that appellant paid taxes,
assessed for municipal purposes, on his personal property,
for the years 1887-88-89-90 and '91.   No objection to the
regularity of the tax is otherwise made.

Without pausing to determine whether the exemption
contained in Sec. 2 of the special charter was in violation
of Sec. 5, Art. 9, of the Constitution of 1848, which pro-
vided, that "the corporate authorities of counties,   *   *   *
towns, cities and villages may be vested with power to
assess and collect taxes for corporate purposes, such taxes
to be uniform in respect of persons and property within the
jurisdiction of the body imposing the same; and the gen-
eral assembly shall require that all property within the
limits of municipal corporations, belonging to individuals,
shall be taxed for the payment of debts contracted under

authority of law," we are of opinion that the land of appellant was subject to taxation for municipal purposes. However, see *Trustees* v. *McConnel*, 12 Ill. 138; *O'Kane* v. *Treat*, 25 id. 561; *Hunsecker et al.* v. *Wright et al.*, 30 id. 146; *St. Louis Bridge Co.* v. *E. St. Louis*, 121 id. 246; *Cooley on Taxation, pp.* 133–4; *City of Chicago* v. *Baptist Theo. Union*, 115 Ill. 245. Nor will a discussion of the power of the legislature to commute taxes to municipal or private corporations or persons be necessary. It is, however, uniformly held, that where the right to commute exists, it is in substitution for something else, in place and lieu of the tax. *B. & O. R. R. Co.* v. *Maryland*, 21 Wall. 456; *Mil., etc., R. R. Co.* v. *Supervisors, etc.*, 29 Wis. 116; *Cooper* v. *Ash*, 76 Ill. 11; *Ill. Cent. R. R. Co.* v. *McLean Co.*, 17 id. 291; *Board of Sup., etc.*, v. *Campbell et al.*, 42 id. 492, and cases *supra*. And if the power to commute exists, the legislature is the sole judge of its propriety, and its acts not being subject to revision by the co-ordinate powers of the State, it must be clear that commutation was intended. It will not be presumed that the legislature intended to create inequality in the assessment of persons or property within the municipality. It is said in *Cooper* v. *Ash*, *supra:* "Even if it were conceded, which it is not, that the legislature may commute county or local taxes for some other consideration in lieu thereof, such commutation should operate with fairness and uniformity upon the tax-payers of the corporation with which it should be made." And it was there said, that what was attempted to be done in that case "can amount to no more than an attempt to commute with an individual, which we are clear never was contemplated by the framers of the constitution, and is not within legislative power." Without determining whether a commutation, which will assume the character of a contract, between a private corporation or individual and the State would be upheld (*I. C. R. R. Co.* v. *McLean Co., supra*), it is sufficient to say there

was here no attempt at commutation. But as in *Trustees, etc.,* v. *McConnel, supra,* and *O'Kane* v. *Treat, supra,* there was simply an effort unconditionally to make an exemption from the payment of municipal taxes. Appellant paid nothing in lieu of or substitution for taxes upon his property. The payment of taxes upon his personal property was no more than his just proportion of the burden of taxation in respect of such property. And, however desirable his residence within the city might be, he received an equivalent in common with other citizens of the municipality by the protection and convenience afforded. It is, therefore, clear, conceding the power of the legislature to commute, that appellant had no vested interest or right in the exemption, and the question of taxation of his property in common with other property within the city remains subject to legislative control.

The Constitution of 1870 again declares and enforces the principle of uniformity in taxation. Sec. 3, of Art. 9, provides what property may be exempted from taxation, but provides that such exemption must be by general law. Sec. 9 of this article provides that the general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property; and, "For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same." And the legislature, by the general act for the incorporation of cities and villages, sec. 1 (¶ 112, S. & C.) art. 8, has vested power in the corporate authority of cities and villages to levy and collect taxes for corporate purposes, and requiring such authorities to ascertain the total amount of appropriations for all corporate purposes for the fiscal year, etc., and to "levy the amount so ascertained upon all the property subject to

taxation within the city or village, as the same is assessed and equalized for State and county purposes for the current year." And by the 5th section of said article it is provided that, "all taxes levied or assessed by any city or village, except special assessments for local improvements, shall be uniform upon all taxable property and persons within the limits of the city, and no property shall be exempt therefrom other than such property as may be exempt from taxation under the constitution and general laws of the State." By an act of the legislature, in force July 1, 1877 (1 S. & C. 537), it is provided: "That all cities and villages and incorporated towns in this State, whether organized under the general law or special charters, shall assess and collect their taxes in the manner provided for in article eight (8)," of said general incorporation act, "and in the manner provided for by the general revenue laws of the State." Without extending this opinion by an analysis of these statutes, it seems clear that, under the general act for the incorporation of cities and villages, the land of appellant, being subject to taxation for other purposes, would be liable to municipal taxation.

By the adoption of the general law of incorporation for cities and villages, the provisions of that act became applicable to the city of Pana, and all laws in conflict therewith were no longer applicable. (Sec. 6, Art. 1.) It can not be questioned, we think, that the second section of the special act incorporating the city is in conflict not only with the constitutional provision before quoted, but with the provisions of the general incorporation law, under which the city, after its change of organization, must impose taxes for municipal purposes. And it follows, if the exemption contained in the second section of the special charter could be otherwise held to be valid, that after the change of organization it could not be of any validity in the imposition of municipal taxes.

We are of opinion that the land in question, lying within the corporate limits of the city, was subject to taxation, and that the judgment of the County Court must, therefore, be affirmed.

*Affirmed.*