THE STATE ex rel. JOHN B. MORGAN, Appellant, v. IDA E. HEMENWAY.

In Banc, November 17, 1917.

1. **TAXATION: Agricultural Lands by City: Exemption: Repeal by Legislature.** In the absence of a constitutional inhibition to the contrary (and there was none in the Constitution of 1820), the Legislature was vested with inherent power to repeal a provision in a charter granted by special act of the Legislature in 1853 forbidding the city to levy and collect taxes on lands included within an extension of its corporate boundaries unless and until said lands were laid off into lots. Said act did not create a contractual obligation on the part of the General Assembly to exempt said lands from city taxes, nor an express or implied agreement to refrain from repealing said exemption or amending said act.

2. ———: ———: ———: **Subject to Subsequent Laws.** Lands exempt from city taxation by a special charter granted in 1853 became subject to taxation for city purposes after said city became a city of the fourth class, under the general law of taxation relating to cities of such class, there being nothing in the then Constitution or in the act itself which inhibited the General Assembly from making such property subject to city taxes.

3. ———: ———: **No Exemption by Subsequent Act.** Section 11335, Revised Statutes 1909, does not exempt agricultural or pastoral lands included within the corporate limits of a city which was incorporated by special act of the Legislature in 1845, amended in 1853 so as to include such lands and providing that they were not to be taxed until laid off into lots; and the General Assembly had power, under the Constitution of 1875, to enact said Section 11335, omitting such exemption therefrom.

4. ———: ———: **Prospective Operation of Constitution of 1875.** The Constitution of 1875 was not intended to be so prospective in its operation as to forbid the Legislature from repealing a provision in the special charter granted to a city in 1853 exempting agricultural lands within its then corporate limits from city taxes. The Constitution in effect declared that the owner of such lands should not after its adoption receive the benefit of any exemption from taxation found in said special charter.

5. ———: ———: **No Longer Considered Within Corporate Limits.** The fact that agricultural land was brought within the city limits by legislative enactment in 1853, and that the exemption of it from city taxation was one of the inducements for bringing it in,

and that subsequently the Constitution and statutes repealed that exemption, valid when made in 1853, do not constitute a sufficient reason for considering the property as no longer within the city's corporate limits.

Appeal from Howard Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED AND REMANDED (*with directions*).

*Calfee & Westhues* for appellant.

(1) Section 3 of the amendment to the charter in question exempting said land from taxation was made null and void by the Constitution of 1875, being in direct conflict with sections 6 and 7 of article 10 of said Constitution. Birch v. Plattsburg, 180 Mo. 413; Westport v. Magee, 128 Mo. 152; State ex rel. v. O'Brinen, 89 Mo. 631; Hislop v. Joplin, 250 Mo. 588; Hayward v. People, 145 Ill. 55; McQuillin on Municipal Corporations, secs. 291, 295. (2) All laws in conflict with the Constitution of 1875, were repealed on its adoption. Section 1 of the Schedule declared "that the provisions of all laws which are in conflict with this Constitution shall cease upon its adoption." Deal v. Mississippi County, 107 Mo. 468; St. Joseph Board v. Poetten, 62 Mo. 444. (3) Though section 3 of the amendment to the charter exempting defendant's land from taxation for city purposes was repealed and made null and void by the constitutional provisions above cited, the other sections of the act extending and defining the city limits are valid and are in force, being separative from the exemption section, and a valid law. Birch v. Plattsburg, 180 Mo. 413; Hislop v. City of Joplin, 250 Mo. 588; Westport v. Magee, 128 Mo. 152; Hayward v. People, 145 Ill. 55; L. & N. Ry. Co. v. Barboursville, 105 Ky. 174; McQuillin on Municipal Corporations, 295. (4) The Legislature in extending the limits of Glasgow and exempting certain property both real and personal, in said limits from city taxes, recognized that the exemptions in said act were mere privileges and could be repealed at any time, with-

out disturbing the extension section. The Legislature itself repealed the exemption as to personal property, by an act amending the city charter in the year 1873 (see Laws 1872-3, 236, sec. 3), thereby placing their own construction on said act to the effect that it could be amended at any time. The intention of the Legislature was that the exemption could be repealed at any time without disturbing the extension section. Hislop v. Joplin, 250 Mo. 588. (5) It is the duty of the courts to enforce the organic law and to brush aside statutes which conflict with it whether passed before or after the Constitution was adopted. Deal v. Mississippi County, 107 Mo. 468; Railroad v. Thornton, 152 Mo. 570. (6) The exemption clause in section 3 of the amendment to the charter, exempting defendant's land from city taxes, constituted a mere privilege and defendant has no right in the same, and such exemptions may be repealed at any time, by the adoption of a constitutional provision in conflict therewith. Deal v. Mississippi County, 107 Mo. 468; 5 McQuillin on Municipal Corporations, sec. 2401; Hayward v. People, 145 Ill. 55; Galloway v. Memphis, 116 Tenn. 738; Powell v. Parkersburg, 28 W. Va. 698; Probosco v. Moundsville, 11 W. Va. 501; East Saginaw Mfg. Co. v. East Saginaw, 19 Mich. 259; L. & N. Ry. Co. v. Barboursville, 105 Ky. 174. (7) Such exemptions may be repealed by implication. Powell v. Parkersburg, 28 W. Va. 698. (8) Exemptions granted by the Legislature before the Constitution of 1875, and in conflict therewith, have been held to be valid, but only when they constituted contracts in a charter granted to some corporation or school, etc., and never in a case like the one before the court now. Deal v. Mississippi County, 107 Mo. 468; Scotland County v. Railroad, 65 Mo. 123; Washington University v. Rause, 3 Wall. (U. S.) 439; Railroad v. Laclede Co., 57 Mo. 147. (9) When the city of Glasgow changed from a city of the special charter to a city of the fourth class, it abandoned the old charter, and the exemption section of the Act of 1853 is in direct conflict with the charter of the cities of the fourth class; therefore, the exemption in the old

charter is no longer in force and the city has all powers prescribed in the charter for cities of the fourth class. Among the powers is the power to tax all lands within its limits. 28 Cyc. 244; Westport v. Magee, 128 Mo. 152; State ex rel. v. Young, 259 Mo. 56; Jefferson v. Edwards, 37 Mo. App. 617; Hayward v. People, 145 Ill. 55; Powell v. Parkersburg, 28 W. Va. 698; Galloway v. Memphis, 116 Tenn. 736; Secs. 9347, 9351 and 9400, R. S. 1909. Section 9400 gives the authority to levy taxes on all real estate within the city limits. (10) Every citizen of a city under a special charter enjoys his citizenship subject to such provisions whereby such city may elect to enter the general class and be subject to all the tax laws. State ex rel. v. Young, 259 Mo. 56. (11) The adoption of a new charter repeals the original charter, although there are no express words of repeal. 28 Cyc. 244; Jefferson v. Edwards, 37 Mo. App. 617; Hayward v. People, 145 Ill. 55.

*James A. Collet* and *James H. Denny* for respondent.

(1) Section 3 of the Act of 1853, exempting the land of defendant from taxation, was constitutional and valid under the Constitution of 1820 in force when this act was passed. Kansas City v. Cook, 69 Mo. 127; Lee v. Thomas, 49 Mo. 112; State ex rel. v. Board of Trustees, 175 Mo. 60; St. Vincent's College v. Schaeffer, 104 Mo. 261; State ex rel. v. Cemetery Association, 11 Mo. App. 570; Scotland County v. Railroad, 65 Mo. 123. (2) The provisions of the Constitutions of 1865 and 1875, in the matter of exempting property from taxation, were intended to be prospective only in their operation, and did not affect previous exemptions. State ex rel. v. Board of Trustees, 175 Mo. 60; State ex rel. v. St. Joseph's Convent, 116 Mo. 580; State ex rel. v. William Jewell College, 234 Mo. 319; State ex rel. v. Cemetery Assn., 11 Mo. App. 570. (3) The cases cited by appellant are all cases of legislative exemptions since the Constitution of 1875, admitted to be unconstitutional, and the only question involved was whether the valid could be separated from the invalid portion of the act in relation to extension of city

limits. They are entirely different from this case where the exemption was constitutional and valid under the Constitution in force when it was passed. (4) But even since the Constitution of 1875 where the exemption clause was an inseparable condition and part of the act, the whole act was held void. Copeland v. St. Joseph, 126 Mo. 429; State ex rel. v. Wardell, 153 Mo. 319. (5) Exemption from taxation was the inseparable condition on which defendant's land was annexed to the city, and if either Constitution of 1875 or the act of the city in becoming one of the fourth class did repeal or annul the condition, as claimed by appellant, then the whole act perished with it, and the land is not in the city, and in either event not liable to city taxation. Kansas City v. Cook, 69 Mo. 127; Copeland v. St. Joseph, 126 Mo. 429; State ex rel. v. Wardell, 153 Mo. 319. (6) As section 7 of article 10 of the Constitution operated prospectively only, the previous Act of 1853 remained in force until repealed by the Legislature. Section 1 of Schedule, Constitution 1875. (7) A special statute is not repealed by a general statute unless it expressly refers to same. Folk v. St. Louis, 250 Mo. 116; State ex rel. v. Macon County, 41 Mo. 453; State ex rel. v. Greer, 78 Mo. 188; State ex rel. v. Cemetery Assn., 11 Mo. App. 570. (8) The same rules of construction apply to constitutions as to statutes in matters of repeals. State ex rel. v. Greer, 78 Mo. 188; State ex rel. v. Macon County, 41 Mo. 459. This property cannot be lawfully taxed by the city until the Legislature repeals the exemption in the Act of 1853, and confers the taxing power on the city. (9) The Constitution, of its own force, confers no power to levy taxes. The provisions of the Constitution other than the restrictions on rates, require legislative aid. State ex rel. v. Van Every, 75 Mo. 530; Arnold v. Hawkins, 95 Mo. 572; Public School Board v. Patton, 62 Mo. 449. (10) "The taxing power may be exercised by the General Assembly for State purposes, and by counties and other municipal corporations, under authority granted them by the General Assembly, for county and other corporate purposes." Sec. 1, Art. 10, Constitution Mo. 1875. (11) "The General As-

sembly shall not impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." Sec. 10, Art. 10, Constitution 1875. (12) The power to tax comes from the Legislature, and until it acts giving the authority to levy taxes, there is no power to levy any taxes of any kind whatever. St. Louis v. Wenneker, 145 Mo. 238; Kansas City v. Building & Loan Assn., 145 Mo. 50; Valle v. Ziegler, 84 Mo. 214; State v. Railroad, 77 Mo. 202. (13) The Legislature must provide for the taxation of property. The ways and means for the assessment of property must be provided by law. Omissions in that behalf cannot be supplied by the courts. St. Louis v. Wenneker, 145 Mo. 238. (14) Unless the Legislature exercises its legitimate functions and subjects certain property to taxation it is evident that the constitutional proviso, section 7, article 10, Constitution of 1875, cannot, because of such lack of legislation, become self-enforcive. Kansas City v. Building & Loan Assn., 145 Mo. 53. (15) The courts of this State have recognized the distinction between property expressly exempted from taxation and property not taxed because the Legislature has not conferred the taxing power. Kansas City v. Cook, 69 Mo. 127; Kansas City v. Bldg. & Loan Assn., 145 Mo. 50; State ex rel. v. Wenneker, 145 Mo. 1. c. 230. (16) The Legislature has never conferred the power on the City of Glasgow to tax the land annexed by the Act of 1853; on the contrary, it has withheld the power until such time as this land is laid off into lots, or until this act is altered, amended or repealed by the Legislature. (17) Cities having special charters were not deprived of them by the adoption of the Constitution merely, without supplementary legislation to that effect. State ex rel. v. Fraser, 98 Mo. 429; Rutherford v. Hamilton, 97 Mo. 547. (18) This exemption right under the Act of 1853 has been expressly preserved by the Legislature in cases where cities reorganize under general law until such time as the

General Assembly may see fit to abolish it. Secs. 8530, 9300, R. S. 1909. (19) If the respondent's property was being brought into the city and subjected to taxation under present laws, she would have the right to have the court to pass upon the reasonableness of the extension. The city could not arbitrarily, even by vote of the people, extend its limits merely to increase its revenue, without any corresponding advantages to the property owner. Kelly v. Meeks, 87 Mo. 396; Copeland v. St. Joseph, 126 Mo. 417; Hislop v. Joplin, 250 Mo. 588; State ex inf. v. Kansas City, 223 Mo. 162.

RAILEY, C.—On January 14, 1916, this action was commenced in the circuit court of Howard County, Missouri, by the State, on behalf of John B. Morgan, as collector of the revenue of Glasgow, a city of the fourth class, against defendant, Ida E. Hemenway, for delinquent taxes of the year 1915, assessed against thirty-eight acres of land, situated in section 9, township 51, range 17, located in said city, and belonging to her. It is conceded that the petition is in the usual form.

The answer admits: The incorporation of Glasgow as a city of the fourth class; that said Morgan is the legally qualified and acting collector of said city; that defendant, at the time of the institution of this suit, and at all the dates mentioned in the petition, was the owner of the real estate described in said petition; that said city has taken all proper steps in the collection of taxes against defendant's property to entitle it to recover in this suit, provided the property is subject to levy and collection of city taxes. The answer then pleads as a defense:

"First: That the city of Glasgow was originally organized and incorporated under a special charter, by an Act of the Legislature, approved February 27, 1845, entitled 'An Act to Incorporate the City of Glasgow,' and by an act amendatory thereof, approved January 31, 1853, entitled 'An Act to Amend an Act to Incorporate the City of Glasgow,' approved February 27, 1845.

"Second: That said city by virtue of said acts became and remained a city under a special charter, until

272 Mo.—13

the 23rd day of March, 1915, when it elected to become a city of the fourth class, under the laws of the State of Missouri.

"Third: That the original act incorporating said city under special charter did not include defendant's said real estate, but that said real estate, together with much other real estate of the same character, was first included in the city limits by the Act of the Legislature of 1853, amending said original act.

"Fourth: That by provisions of the amendatory act of 1853, and by which alone defendant's land became a part of the city of Glasgow, it was expressly provided that the mayor and councilmen of said city should not have the power to collect taxes on any real estate annexed to the city by said act, unless the same was then, or should thereafter be, laid off into lots.

"Fifth: That defendant's said real estate was not at that time, and never has been laid off into lots.

"Sixth: That defendant's said land was at the time of the passing of said amendatory act, and is now, and has at all times been adapted, fitted and used only as farm and pastoral lands; that it is of uniform width of 582 feet, fronting south on the public road, and extending back to Bear Creek, the northern boundary of the city, and containing about thirty-eight acres.

"Seventh: That no other road, street or thoroughfare of any kind, save the public road extending along the south boundary of said land, traverses or touches it.

"Eight: That said land contains only a single habitation, the abode of defendant.

"Ninth: That the lands adjacent to defendant's said land are used only as farm and pastoral lands, and have not been subdivided into lots or blocks.

"Tenth: That there has been no increase in the population of the city of Glasgow, since the adoption of said amendatory act of 1853, creating a demand for defendant's land, or lands adjacent thereto, for residence or other city purposes, or adding to said lands any value distinct from its natural use for farm and pastoral lands.

"Eleventh: That by said amendatory act of 1853 the Legislature recognized that it would be unfair and unjust to allow lands of the character of defendant's land, used only for farm and pastoral lands, to be taxed for city purposes, and by said act withheld from the city of Glasgow the power to tax said lands until such time as it should be laid off into lots, and that said lands were brought into the city of Glasgow upon the express terms and conditions that the same were to be exempt from city taxes, until such time as they should be laid off into lots.

"Twelfth: That the terms and conditions of said act of 1853, and all of them, were and are now a binding obligation and contract on the part of the city of Glasgow, and the owners of the lands therein, and that said terms and conditions were not and could not be annulled or abrogated by the city of Glasgow on becoming a city of the fourth class, or otherwise, but still remain a binding limitation upon its power, and that an attempt of the city to tax this property is an unlawful, unreasonable and arbitrary exercise of power.

"Thirteenth: That the city of Glasgow in assuming to tax defendant's lands, contrary to the terms of the act of the Legislature which brought the land into the city limits, is an attempt to impair the obligation of the contract contained in said act, and to deprive defendant of her property without due process of law, in violation of section 10, article 1, of the Constitution of the United States, and sections 15 and 30 of article 2, of the Constitution of the State of Missouri, and take private property for public use without due compensation contrary to section 21, article 2, of the Constitution of Missouri."

A general demurrer was interposed by plaintiff to said answer, on the ground that it failed to controvert the allegations of said petition and because it did not contain facts sufficient to constitute a valid defense in this case. On September 28, 1916, the above demurrer was by the court overruled; plaintiff declined to plead further and a general judgment was rendered in favor of defendant. Plaintiff, in due form, appealed from said judgment to this court.

I. The only question involved in this appeal, is whether or not respondent's land is subject to taxation by the city of Glasgow. A determination of this issue involves the consideration of disputed questions of law.

Repeal of Tax. Exemption.

The city of Glasgow, in Howard County, Missouri, was incorporated under a special act of the Missouri Legislature, approved February 27, 1845, and its original charter provisions will be found in the Acts of 1844-5, at pages 141 and following. It is conceded that the land in controversy was not included within the boundaries of Glasgow, by the terms of the special charter of 1845, supra. The Legislature by a special act approved January 31, 1853, reported in the Acts of 1852-3, at pages 251-2, amended the act of 1845, so as to include within the boundaries of Glasgow, the land in controversy. Section one of the amendatory act describes the boundaries of said city and need not be set out here. Sections 2, 3 and 4 of same read as follows:

"Sec. 2. The mayor and councilmen of the city of Glasgow are hereby authorized and empowered to do all acts and things, and to have the same jurisdiction within the limits hereby established, that were conferred by the act of incorporation to which this is amendatory, except as hereinafter provided.

"Sec. 3. The mayor and councilmen shall not have the power to levy and collect taxes on any real estate unless the same is laid off into lots, or may hereafter [be] laid off into lots; and no taxes shall be levied or collected on any personal property situated upon any real estate not laid off into lots within the above limits.

"Sec. 4. Not less than one-half of the amount of taxes levied and collected from the new limits incorporated within said city, shall be expended in improvement of the new limits.

"This act shall be in force from and after its passage."

It is conceded by counsel upon both sides—and properly so—that when the Act of 1845, as well as that of 1853, supra, were passed, there was no provision in our

Constitution, as it then stood, which forbade the Legislature from passing said acts, or either of them, nor from exempting defendant's land aforesaid from taxation, as provided in the Act of 1853. On the other hand, without the consent of defendant, the Legislature, in 1853, if it had seen fit to do so, could have included defendant's property within the boundaries of Glasgow, and have subjected the same to the payment of city taxes like those sued for in this suit. There was no *contractual obligation* upon the part of the General Assembly to exempt defendant's property in said city from taxation, at the time of the passage of the Amendatory Act of 1853. Nor was there any express or implied agreement upon the part of the Legislature, to refrain from repealing, amending or otherwise changing said acts or either of them, in the future, so that defendant's property might be subjected to the payment of city taxes. The Constitution of 1820 was in operation when both the above acts were passed. It contained no language or provisions which precluded the General Assembly of this State from repealing, amending or changing said laws by appropriate future legislation. In the absence of any constitutional provision to the contrary, the Legislature was vested with the inherent power to repeal the *exemption* of 1853, supra, by permitting the inhabitants of the city of Glasgow, as shown by the record, to become a city of the fourth class, and to be governed thereafter by the provisions of same. [St. Louis v. Russell, 9 Mo. l. c. 511-12; Walden v. Dudley, 49 Mo. l. c. 422; Giboney v. Cape Girardeau, 58 Mo. 141; State ex rel. v. McReynolds, 61 Mo. l. c. 212; Kansas City v. Cook, 69 Mo. l. c. 128; Copeland v. St. Joseph, 126 Mo. l. c. 431; Drainage District v. Turney, 235 Mo. l. c. 93; Hislop v. Joplin, 250 Mo. 588; 1 Dillon on Municipal Corps. (5 Ed.), secs. 92, 355 and following; 4 Dillon on Municipal Corps. (5 Ed.), sec. 1394, page 2424; Cooley's Const. Limitations (7 Ed.), page 266; Cooley on Taxation (3 Ed.), page 111; Washburn v. Oshkosh, 60 Wis. 453; Hayward v. People, 145 Ill. 55; Town of Cicero v. Chicago, 182 Ill. 301; People v. Rock Island, 271 Ill. 412; Graham v. Green-

ville, 67 Tex. 62; Cohen v. Houston, 176 S. W. (Tex.) l. c. 813; Winzer v. Burlington, 68 Iowa, l. c. 282; Galloway v. Memphis, 116 Tenn. 736; L. & N. R. R. Co. v. Barbourville, 105 Ky. 174; Walker v. Richmond, 173 Ky. 26; East Saginaw Mfg. Co. v. East Saginaw, 19 Mich. 259; Attorney-General v. Springwells Tp. Board, 143 Mich. 523; State ex rel. v. Kolsem, 130 Ind. l. c. 442; Toney v. Macon, 119 Ga. 83; Probasco v. Moundsville, 11 W. Va. 501; Powell v. Parkersburg, 28 W. Va. 698; Booten v. Pinson, 89 S. E. (W. Va.) 985; Camp v. State, 72 So. (Fla.) 483; McClintock v. Great Falls, 163 Pac. (Mont.) l. c. 101; City of Ensley v. Simpson, 166 Ala. 366; State ex rel. v. Thompson, 69 So. (Ala.) 461; State ex rel. v. Williams, 68 Conn. 131; Berlin v. Gorham, 34 N. H. l. c. 275; People v. Pinckney, 32 N. Y. 377; Phipps v. Medford, 156 Pac. (Ore.) 787; Mt. Pleasant v. Beckwith, 100 U. S. l. c. 529; 28 Cyc. 183.]

Section 7 of article 9 of our present Constitution provides that:

"The General Assembly shall provide, by general laws, for the organization and classification of cities and towns. . . . The General Assembly shall also make provisions, by general law, whereby any city, town or village, existing by virtue of any special or local law, may elect to become subject to, and be governed by, the general laws relating to such corporations."

The Legislature carried into effect the above provision of our Constitution, and enacted section 8527, Revised Statutes 1909, which reads as follows:

"All cities and towns in this State containing five hundred and less than three thousand inhabitants, and all towns existing under any special law, and having less than five hundred inhabitants, which shall elect to be cities of the fourth class, shall be cities of the fourth class."

Section 8530, Revised Statutes 1909, strongly relied upon by defendant, reads as follows:

"All rights and property of every kind and description, which were vested in any city under its former organization, shall be deemed and held to be vested in such city upon its becoming reorganized as provided

in the preceding section; but no rights or liabilities, either in favor of or against such city, existing at the time of so becoming reorganized, and no suit or prosecution of any kind shall be affected by such change, but the same shall stand and progress as if no change had been made."

Article 9 of chapter 84, Revised Statutes 1909, relates to "Cities and Towns under Special Charters." Section 9582, Revised Statutes 1909, included in said article 9, reads as follows:

"Any municipal corporation in this State, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the State, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the State law upon the same subject."

The defendant in her answer, admits: "The incorporation of the city of Glasgow, as a city of the fourth class."

Taking a retrospective view of the situation, in connection with the constitutions, statutes and authorities heretofore mentioned, we deduce the following conclusions: (a) That the act of 1853, which incorporated defendant's property within the boundaries of Glasgow and exempted the same from taxation, was valid at the time of its enactment and that said exemption continued, *without* question, until, *at least,* the time of the adoption of the Constitution of 1865. (b) That when the above statute of 1853 was enacted, the Legislature had the *inherent right*—if it had seen fit to exercise it—to include defendant's property within the boundaries of said city, with or without her consent, and to have subjected the same to the payment of city taxes thereafter. (c) That the Legislature of 1853 made no express or implied agreement with defendant, by which it obligated itself to continue said exemption for all time to come. On the contrary, it had the legal right to amend said Act of 1853, after its passage, during the

*same session,* or at any subsequent session, and to have subjected defendant's property therein, to the payment of city taxes. (d) That after Glasgow became a city of the fourth class, the property of defendant therein became subject to taxation, just as it would have been had said city changed from a village to a city of the fourth class. In other words, defendant's property having been included by the Legislature in 1853 within the boundaries of Glasgow, continued therein after the latter became a city of the fourth class, and subject to the general law of taxation relating to cities of such class.

II.   Leaving out of consideration the Constitution of 1865, was the Act of 1853 including defendant's property within the boundaries of Glasgow, and exempting the same from taxation therein, any longer effective, after the adoption of our present Constitution? The latter became operative on November 30, 1875. Section one of the Schedule of same reads as follows:

Constitution of 1875 and Statutes.

"The provisions of all laws which are *inconsistent* with this Constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions of this Constitution as require legislation to enforce them shall remain in force until the first day of July, one thousand eight hundred and seventy seven, unless sooner amended or repealed by the General Assembly."

Section 3 of article 10 of above Constitution provides that:

"Taxes may be levied and collected for public purposes only. They shall be *uniform* upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by *general* laws."

Section 4 of article 10, supra, provides that:

"All property subject to taxation shall be taxed in proportion to its value."

Sections six and seven of said article, are as follows:

"Sec. 6. The property, real and personal, of the State, counties and other municipal corporations, and cemeteries, shall be exempt from taxation. Lots in incorporated cities or towns, or within one mile of the limits of any such city or town, to the extent of one acre, and lots one mile or more distant from such cities or towns, to the extent of five acres, with the buildings thereon, may be exempted from taxation, when the same are used exclusively for religious worship, for schools, or for purposes purely charitable; also, such property, real or personal, as may be used exclusively for agricultural or horticultural societies: Provided, That such exemptions shall be only by general law."

"Sec. 7. All laws exempting property from taxation, other than the property above enumerated, shall be void."

The Legislature, in the enactment of Section 11, 335, Revised Statutes 1909, provided that:

" . . . Lots in incorporated cities or towns, or within one mile of the limits of any such city or town, to the extent of one acre, and lots one mile or more distant from such cities or towns, to the extent of five acres, with the buildings thereon, when the same are used exclusively for religious worship, for schools or for purposes purely charitable, shall be exempted from taxation for State, county or local purposes."

It is perfectly manifest from the reading of above statutes and constitutional provisions, that they are in irreconcilable conflict with Section 3 of the Act of 1853, which reads as follows:

"The mayor and councilmen shall not have the power to levy and collect taxes on any real estate unless the same is laid off into lots, or may hereafter be laid off into lots; and no taxes shall be levied or collected on any personal property situated upon any real estate not laid off into lots within the above limits."

Ten years later, the Legislature repealed a *portion* of the above exemption as shown in Section 3 of the Acts of 1872-3, at page 236, which said section reads as follows: "That all persons residing upon real estate with-

in the corporate limits of the city of Glasgow, heretofore exempt from taxation, shall be subject to pay a tax upon their personal property," etc.

We therefore have before us a *part* of the mere *exemption* privilege granted defendant in 1853, which was subject to repeal at will by the Legislature, and which became inconsistent with the provisions of the present statute and sections of our Constitution supra. So far as the record discloses, defendant received the benefit of said exemption from 1853 up to 1915, when Glasgow, in due form, became a city of the fourth class, and subject to the general laws relating to the latter.

III. It is insisted by respondent that the provisions of our present Constitution were intended to be prospective only in their operation, and that they should not Prospective be construed as a repeal of the exemptions spe-Operation. cified in the Act of 1853. We are not favorably impressed with this contention. If the plaintiff were suing for taxes alleged to be due the city of Glasgow before the adoption of the Constitutions of 1865 and 1875 respectively, then it might be *claimed,* that the provisions of said Constitutions should not apply. When the present Constitution of 1875, however, was adopted, it said in legal effect to defendant: You shall not hereafter receive the benefit of any exemption from taxation in respect to the property in controversy under the Act of 1853. Respondent was exercising a mere privilege up to this point, subject to the right of the law-making power of the State to revoke such privilege.

In discussing this subject in Drainage District v. Turney, 235 Mo. l. c. 92-3, Commissioner Brown of this court, in clear and forceful language, said:

"A retrospective law is one which creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. It must give to something already done a different effect from that which it had when it transpired.

"In this case the only ground upon which a retrospective application of this statute is asserted is that it

applies to an object already in existence at the time of its enactment. Were this a good objection it would lead to startling results, for it could be as well claimed that no statute could be enacted imposing new duties upon or giving new privileges or rights to a person already born as that these things could not be done by the Legislature with reference to a corporation already created.

"It may be that in the third paragraph of its answer, the respondent intended to intimate that by taking him into this drainage district and thereby imposing upon him the burden of taxation to pay an indebtedness already created, some other constitutional right of his would be invaded than the one which he specified. If so he has failed to point it out. Notwithstanding the omission, however, it may not be entirely improper to suggest that it seems to be well settled in this State that the Legislature may give to a municipal corporation the power by its own unaided act expressed in an ordinance, to extend its limits so as to include the property and persons of those having no voice whatever in the transaction, and subject them to taxation for all purposes to the same extent as original members of the corporation, subject only to the qualification that such action must be reasonable. [Kelly v. Meeks, 87 Mo. 396; Copeland v. St. Joseph, 126 Mo. 417.] This being true we cannot see why a public corporation of this character invested with all the necessary power and authority to do whatever should be necessary in the execution of its public functions, could not be invested by the Legislature with authority to procure the extension of its limits by a judicial proceeding in which the reasonableness and necessity of the action is in issue."

The above quotation expresses our view of the law in regard to the matter before us. We are of the opinion that when the city of Glasgow elected to become, and did become, a city of the fourth class, defendant's property contained within the boundaries thereof became liable for the payment of the taxes sued for in this action.

IV. Defendant's counsel make the point that as defendant's property was brought within the limits of

Glasgow in 1853 by legislative enactment, the *exemption* from taxes was one of the *inducements* for bringing said

**Considered as Still Within City Limits.**

property into the corporate limits of said city, and that, hence, if the Constitution and statutes repealed this privilege, her property should no longer be considered within the corporate limits of said city. The authorities heretofore cited by counsel from this State relating to this question, are based upon the idea that, as the law which declared the exemption was unconstitutional by reason of said exemption, the right to include defendant's property within the corporate limits of said city did not exist. We are, however, dealing with an exemption here, which was *valid* when made in 1853, but was *ineffective* after the adoption of our present Constitution. The rulings of this court are not in accord with defendant's contention in respect to this matter. Even if the Legislature had, by enactment, authorized a city like Glasgow to take in and exempt from taxation property like defendant's the *exemption* would be *unavailing* because of the provisions of our Constitution. The right of the city, however, to extend its corporate limits and take in the property, would not be unauthorized merely because an illegal exemption had been provided for in taking the property into the corporate limits. The recent rulings of this court are in accord with the foregoing views. [Copeland v. St. Joseph, 126 Mo. 417; Birch v. Plattsburg, 180 Mo. 413; Hislop v. Joplin, 250 Mo. 588; State ex inf. v. Jones, 266 Mo. 1. c. 198.]

The above contention of respondent has no application, however, to the present controversy, for the obvious reason that the *exemption* provided for in the Act of 1853, was *valid* when said law was enacted, and continued to be in force, *without question*, until the adoption of the Constitution of 1865. The authorities heretofore cited under Proposition I conclusively establish the right of the Legislature to repeal, amend or change the Act of 1853 at will, and without the consent of defendant and others, to whom exemption privileges may have been extended in the original act.

We accordingly rule that the above contention is without merit when applied to the facts of this case.

V. It is conceded that Glasgow has become a city of the fourth class in due form and that the taxes sued for should be paid, if defendant's real estate in controversy is not exempt from the payment of same. So far as the record discloses defendant's real estate has been within the corporate limits of Glasgow since 1853, and she has never paid any city taxes thereon. She has received whatever benefits flowed from her relationship to the city, and ought not to complain at this late day in being called upon to bear some of the city's burdens. The above conclusion is in accord with the expressed views of this and other courts. [State ex rel. v. Young, 259 Mo. 52; Drainage District v. Turney, 235 Mo. l. c. 92-3; Hayward v. People, 145 Ill. 55; Washburn v. Oshkosh, 60 Wis. 453; Toney v. Macon, 119 Ga. 83; Galloway v. Memphis, 116 Tenn. 736; Cohen v. Houston, 176 S. W. l. c. 813.] Many of the other authorities cited in proposition one are to the same effect.

*Obligation to Pay Taxes.*

Other questions are raised and discussed by counsel, which have been duly considered, but we do not deem it necessary to add anything to what has already been said in regard to the merits of the controversy. We are of the opinion that the trial court committed error in overruling plaintiff's demurrer to defendant's answer and in entering judgment for the latter. On the record and admissions contained in the answer, the plaintiff was entitled to recover.

The judgment below is accordingly reversed and remanded with directions to the trial court to enter a judgment for plaintiff and to otherwise dispose of the case in conformity to the views here expressed.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted by the Court in Banc as the opinion of the Court in Banc. All the judges concur, except *Bond, J.,* who dissents.